Leconte **FLEURINOR**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 78–1485.**

United States Court of Appeals, Fifth Circuit.

Nov. 30, 1978.

---

Bierman, Sonnett, Beiley, Shohat & Osman, Edward R. Shohat, Lawrence E. Besser, Miami, Fla., for petitioner.

Griffin B. Bell, Atty. Gen., Philip Wilens, Chief, Govt. Reg. & Labor Section, James P. Morris, Atty., Lawrence W. Chamblee, Dept. of Justice, Washington, D. C., for respondent.

Edward T. Sweeney, Dist. Dir., U. S. Dept. of Justice, Immig. & Nat. Ser., Miami, Fla., Troy A. Adams, Jr., Dist. Dir., Immig. & Nat. Ser., New Orleans, La., for other interested parties.

Before GOLDBERG, Circuit Judge, SKELTON *, Senior Judge, and FAY, Circuit Judge.

FAY, Circuit Judge:

Petitioner appealed a denial by the Immigration Judge of a petition to withhold deportation. The Board of Immigration Appeals affirmed that denial. This Court has jurisdiction to review the Board's affirmance under 8 U.S.C. § 1105a(a).

In this appeal, petitioner raises three points. First, petitioner asks this Court to remand this cause to the Immigration and Naturalization Service (INS) for the purpose of considering additional "material" evidence, to wit: the latest report of Amnesty International concerning political conditions in Haiti. Second, petitioner asserts that in light of the evidence offered at the

* Senior Judge of the United States Court of Claims, sitting by designation.

1. Fleurinor is therefore deportable under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2), which provides:
   (a) Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—

deportation hearing, the Board's affirmance of the Immigration Judge's refusal to withhold deportation constituted an abuse of discretion. Lastly, petitioner claims that the Immigration Judge abused his discretion when, after denial of political asylum by the District Director of INS, the judge refused to remand the case to INS for further consideration of petitioner's claim of impending persecution upon his return to Haiti. For the reasons set forth below, we affirm.

FACTS

■ Leconte Fleurinor, petitioner-appellant herein, is a native and citizen of Haiti. He entered the United States at Miami, Florida in June 1971 aboard the Liberian M/V "Freeport I" without presenting himself for inspection by a United States Immigration Officer.[1] Deportation proceedings commenced on May 3, 1972. Fleurinor conceded deportability as charged, but like many of his compatriots, alleges that he will face persecution on his return to Haiti. Accordingly, his deportation hearing was adjourned to give him an opportunity to apply to the District Director for political asylum and temporary refuge in the United States. His request was denied in January of 1976.

Respondent then filed an application to withhold his deportation to Haiti under Section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h), which provides:

The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such

(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States . . . . .

period of time as he deems to be necessary for such reason.[2]

The Immigration Judge denied the application holding that petitioner failed to show a well-founded fear that his life or freedom would be threatened in Haiti on account of his political opinion. However, the Immigration Judge did grant petitioner thirty days to voluntarily depart the United States in lieu of forced deportation.

At the deportation hearing, petitioner's evidence consisted of his own testimony and that of two others. In support of his application, the petitioner testified that he had left Haiti for the Bahamas in 1963 in order to seek employment. He returned briefly in 1968 to visit his family. In 1970, he again returned to Haiti from the Bahamas. Upon arriving at the airport in Port au Prince in May of 1970, the petitioner testified that he was immediately arrested by the Ton Ton Macoute (the semi-official secret police of former President Francois "Papa Doc" Duvalier's government), and taken to jail at Fort Dimanche. Petitioner further testified that he was told by the police at the time of his arrest that he had been accused by officials at the Haitian consulate in the Bahamas of taking part in the invasion of Haiti, apparently originating in the Bahamas. Petitioner also testified that he remained incarcerated for ten days, during which time he was beaten by jail guards and robbed of his money and other personal property. Fleurinor also testified that he managed to bribe his way out of prison and escape to the Bahamas. He testified that he fears for his life and liberty if forced to return to Haiti.

Two witnesses, petitioner's brother and a friend testified in his behalf. Their testimony was substantially the same as that of the petitioner. However, the petitioner's brother admitted that he was not in Haiti at the time of the petitioner's purported incarceration and that he learned of that event from correspondence with his mother and father, who reside in Haiti. The petitioner's friend also admitted that he did not

have personal knowledge of Fleurinor's incarceration in Haiti. The witnesses and the petitioner testified that the petitioner and his family were not participants in political activities in Haiti and that, specifically, the petitioner did not participate in an invasion of Haiti. It appears from the collective testimony of the witnesses that members of the petitioner's family who presently reside in Haiti have not been arrested or harmed by the government of that country.

I.   The Amnesty International Report

Petitioner's first claim is that this Court should vacate the decision of the Board of Immigration Appeals and remand this cause in order that the latest report of Amnesty International, concerning political conditions in Haiti, be considered. Our authority to do this is 28 U.S.C. § 2347(c) which provides in relevant part:

(c) If a party to a proceeding to review applies to the court of appeals in which the proceeding is pending for leave to adduce additional evidence and shows to the satisfaction of the court that—

(1) the additional evidence is material; and,

(2) there were reasonable grounds for failure to adduce the evidence before the agency;

the court may order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency.

This statute has been held applicable to INS decisions despite the charge to this court in the Immigration Act to review INS action solely on the administrative record. 8 U.S.C. § 1105a(a)(4) (1970). See *Coriolan v. Immigration And Naturalization Service,* 559 F.2d 993, 1003 (5th Cir. 1977). Accordingly, in order for this court to order receipt of additional evidence, Fleurinor must show: 1) that the evidence is "material," and 2) that there were reasonable grounds for failure to produce the evidence before the agency.

---

**2.**   This authority is discretionary and has been delegated to the special inquiry officer (immigration judge), under Title 8, Code of Federal Regulations, Section 242.8(a).

We decline to vacate and remand this action pursuant to 2347(c) as Fleurinor has failed to satisfy either condition. As to the issue of materiality, petitioner cites *Coriolan v. INS,* 559 F.2d 993 (5th Cir. 1977), a recent opinion of this Court which petitioner claims established the materiality of the Amnesty International Report. However, the *Coriolan* decision does not establish the universal materiality of this report. In order for evidence to be "material" within the meaning of Section 2347(c), the evidence must be probative on the issue of the likelihood of *this* alien being subject to persecution in the event of deportation. Nothing in *Coriolan* is to the contrary. We have read the Amnesty International Report, and while we are repulsed by the wholesale disregard of fundamental human rights by Jean Claude (Baby Doc) Duvalier's government, we do not see how the Report adds anything to Fleurinor's claim that *he* will be subject to persecution upon his return to Haiti. Thus, it is not "material" to this cause and the first prong of the two-pronged 2347(c) test is not satisfied.

However, even if we were to rule that the Report is material to this cause, we could not exercise our 2347(c) option in that petitioner has not shown reasonable grounds for failure to produce the evidence before the agency and has therefore also failed to satisfy the second prong of the 2347(c) test. Three months after petitioner's counsel filed the appeal with the Board of Immigration Appeals he was in receipt of the Amnesty International Report. It must be noted that receipt of this Report was over a year before the Board affirmed the Immigration Judge's decision. It is undisputed that petitioner could have petitioned the Board to reopen the case for consideration of the Report. 8 C.F.R. § 3.8(a) (1978). However, to this date petitioner has declined to pursue this avenue. Rather, petitioner has waited almost two years before first mentioning the possible materiality of this Report. While this Court has entertained requests for reopening, under § 2347(c), *see, e. g., Coriolan v. INS,* 559 F.2d 993 (5th Cir. 1977); *Paul v. INS,* 521 F.2d 194 (5th Cir. 1975), we will not encourage dilatory tactics. In that spirit, this Court has found the continued availability of a reopening of the INS proceedings a central factor showing the unreasonableness of a petitioner's failure to produce the evidence before the agency. *Paul v. INS,* 521 F.2d 194, 201 (5th Cir. 1975).

In this respect, this case is unlike *Coriolan.* In *Coriolan,* the Report was released after both the original hearing and the affirmance by the Board of Immigration Appeals. 559 F.2d at 1004. With that in mind, no claim of dilatory tactics could be sustained. Indeed, our decision to order additional evidence in *Coriolan* was substantially motivated by a desire to avoid launching that case on a lengthy procedural voyage. *Id.* Thus, the factors which led to the result in *Coriolan* are not present here.

## II. Abuse of Discretion

Having disposed of petitioner's request to vacate and remand this action for consideration of the Amnesty International Report, we next consider petitioner's claim that, in light of the evidence adduced at trial, the Board's decision constituted an abuse of discretion. It is well-settled law that the burden of proving that deportation will lead to persecution rests with the alien. 8 C.F.R. § 242.17(c) (1978); *Martineau v. INS,* 556 F.2d 306, 307 (5th Cir. 1977); *Henry v. INS,* 552 F.2d 130, 131 (5th Cir. 1977); *Daniel v. INS,* 528 F.2d 1278, 1279 (5th Cir. 1976). Our authority to review the determination of petitioner's failure to meet his burden of proof is limited:

> Judicial review of discretionary administrative action is limited to the questions of whether the applicant has been accorded procedural due process and whether the decision has been reached in accordance with the applicable rules of law. Furthermore, the inquiry goes to the question whether or not there has been an exercise of administrative discretion and, if so, whether or not the manner of exercise has been arbitrary or capricious.

*Henry, supra,* 552 F.2d at 131.

Accepting our narrow mandate, we are not prepared to find abuse or arbitrariness in

the determinations of the Board or the Immigration Judge. The Immigration Judge was correct in ruling that the testimony favorable to Fleurinor, even if true, does not prove probable political persecution. Assuming the facts that Fleurinor was arrested in 1970, jailed, beaten, and robbed by the Ton Ton Macoute, it does not necessarily follow, as he asserts, that he would be jailed or killed today. Absent from Fleurinor's proof is any basis for believing that the Haitian government has any interest in him today, eight years after the supposed arrest. In addition, his own witness, Mr. Noel admitted that the arrest, rather than being politically motivated, could have been a simple case of extortion.

After Mr. Fleurinor bribed his way out of Fort Dimanche, he was issued a passport by the Haitian government and was permitted to return to the Bahamas, the point of embarcation for the 1968 invasion. It is difficult to believe that Haiti would allow Fleurinor to return to the breeding grounds of the 1968 invasion if it feared his loyalty. Moreover, his family remains unmolested by the Duvalier regime. To prove probable political persecution today, Fleurinor would have to provide some evidence that the Haitian government remembers him. Without this critical element, his proof falls short of meeting his burden to show probable persecution.

■ We are not insensitive to the claims of those who flee their homelands for political reasons and legitimately fear persecution on return. This country has grown to greatness through the contributions of many such people. Nevertheless, Congress has set forth the criteria for withholding deportation.[3] We recognize that claims of falling within those criteria are easily made. We hold simply that petitioner has failed to place himself within the statutory framework of those persons deemed eligible to

remain. It follows that there was, therefore, no abuse of discretion.

### III. 8 U.S.C. § 1105a(a) Jurisdiction

Petitioner's last point concerns the denial of his request for asylum by the District Director of INS. Fleurinor claims that the Immigration Judge abused his discretion by failing to "remand" his case to the District Director in order that he might rebut any State Department communications which may have provided the basis for the District Director's finding that petitioner would not be persecuted if deported to Haiti.

■ Deportable aliens who seek to remain in this country have at least two legal options available to them. First, they may apply for asylum with the district director having jurisdiction over their place of residence or the port of entry. 8 C.F.R. § 108.1 (1978). The regulations governing asylum applications clearly state that in an asylum hearing:

> The district director may approve or deny the application in the exercise of discretion. The district director's decision shall be in writing, and no appeal shall lie therefrom.

8 C.F.R. § 108.2 (1978). Unless the asylum claim is "clearly meritorious or clearly lacking in substance," the district director "shall request the views of the Department of State before making his decision." *Id.* The regulations further state:

> If any decision will be based in whole or in part upon a statement furnished by the Department of State, the statement shall be made a part of the record of proceeding, and the applicant shall have an opportunity for inspection, explanation, and rebuttal thereof. . . . A denial under this part shall not preclude the alien, in a subsequent expulsion hearing, from applying for the benefits of Section 243(h) of the [Immigration and Nationality] Act. . . .

---

**3.** The establishment of requirements for entry into the United States is a political decision which rests with Congress. Efforts being made to influence or change the laws relative to Hai-

tians coming to our country are properly directed toward the legislative branch. The function of the judiciary is to rule in accordance with these legislative mandates.

8 C.F.R. § 108.2 (1978). It is this opportunity for rebuttal which defendant asserts he was denied.[4]

■ The second option is a petition for withholding of deportation under § 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h). A "feared persecution" claim under § 243(h) of the Act is entirely different from an "asylum claim," *see Zamora v. INS,* 534 F.2d 1055, 1059–60 (2d Cir. 1976), in that the former is part and parcel of the deportation proceeding. An asylum claim, on the other hand, can obviate the need for any deportation proceedings at all.

■ An immigration judge has no powers to review the denial of an asylum request by a district director. 8 C.F.R. § 108.2 (1978). Therefore, it is not possible for an immigration judge to "remand" a deportation case to a district director, or to err by refusing to do so.[5]

■ The power of the Court of Appeals to review decisions of the Board of Immigration Appeals is found in § 106(a) of the Act, 75 Stat. 651, 8 U.S.C. § 1105a(a) which vests exclusive jurisdiction over all final orders of deportation made pursuant to 8 U.S.C. § 1252(b) in the Court of Appeals. The Supreme Court considered the boundaries of this section in *Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). In *Cheng,* the Court affirmed a decision by the Third Circuit which held that that Court did not have jurisdiction to review a denial of a stay of deportation by the District Director of INS. After noting that jurisdictional statutes "must be construed both with precision and fidelity to the terms by which Congress has expressed its wishes," the Court held that Congress intended the judicial review provisions of § 106(a), 8 U.S.C. § 1105a(a), to embrace only those determinations made during a proceeding conducted under § 242(b), 8 U.S.C. § 1252(b) and not to include a denial of a stay of deportation by the District Director. 392 U.S. at 212–16. Similarly, in the instant case, the asylum petition is not a determination made during

4. It must be noted that we are uncertain whether the District Director considered any Department of State Communication in handling petitioner's asylum request. Our record reflects only the following letter from Edward T. Sweeney, District Director of INS to Leconte Fleurinor, petitioner:

Dear Sir:

Reference is made to your request for political asylum and temporary refuge in the United States. On the basis of the information presented, it is my opinion that you would not be subject to persecution on account of your race, religion, nationality, or membership in a particular social group or political opinion if you return to Haiti.

Deportation proceedings presently pending in your case will be rescheduled and you will be required to appear before an Immigration Judge for completion of the hearing.

Very truly yours,
Edward T. Sweeney

The only other reference we have to the record in the asylum petition is that portion of the Immigration Judge's opinion which disposes of petitioner's claim that the District Director did not comply with the procedural requirements of 8 C.F.R. § 108.2. The Immigration Judge said:

The procedural requirements of the Code of Federal Regulations (8 C.F.R. 108.2) provide for an inspection, examination and investigation, of the record only if the District Di-

rector's denial of the request for political asylum is based upon a statement obtained from the Department of State. In this case the denial was not based upon any such statement.

In light of our resolution of the jurisdictional issue, we do not here reach the merits of petitioner's third argument.

5. In order to eliminate duplication of proceedings and allow a more efficient and expeditious determination of an alien's rights, the Immigration and Naturalization Service has proposed a rule regarding aliens who are unlawfully within the United States. 43 Fed.Reg. 40,879 (1978). The proposed rule provides that a request for asylum made by an alien after the commencement of deportation proceedings shall be considered by the immigration judge as a request for the withholding of deportation under § 243(h) of the Immigration and Nationality Act. Moreover, a request for asylum made after the completion of the hearing will be considered as a motion to reopen the deportation proceedings for consideration of a § 243(h) claim. The District Director would continue to handle asylum applications of those aliens lawfully residing in the United States. *Id.* We express no opinion concerning how this proposed rule would affect reviewability of asylum applications by this Court but take note of the possible change in procedure.

a proceeding conducted under § 242(b) of the Act, and following the reasoning of *Cheng,* it is not reviewable by this Court under § 106(a) of the Act.[6] Consequently, we are without jurisdiction to entertain petitioner's request for remand to the District Director.

In summation, we refuse to remand this cause for consideration of the Amnesty International Report, we find that the Board did not abuse its discretion in refusing to withhold Fleurinor's deportation, and we are without jurisdiction to consider petitioner's request to remand this cause to the District Director. Accordingly, the decision of the Board of Immigration Appeals is AFFIRMED.

---

**6.** While we in no way wish to encroach on the broad discretion of the District Director in these matters, allegations of procedural irregularities in the asylum proceeding would be reviewable in the appropriate district court. *See Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 209–210, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).