MATTER OF MCMULLEN

In Deportation Proceedings

A-23054818

*Decided by Board October 1, 1980*

(1) Unlike asylum, which is discretionary under the Refugee Act of 1980, relief under section 243(h), as amended by that Act, is mandatory for an eligible alien.

(2) Those cases which hold that applications for withholding of deportation and/or asylum can be made where persecution by a nongovernmental individual or organization is feared, if a showing is made that the government in power is unwilling or unable to protect the alien, are as applicable under the Refugee Act of 1980 as they were under prior law.

(3) The legislative history of the Refugee Act of 1980 indicates that Congress' intent in substituting "life or freedom would be threatened" for "persecution" in section 243(h) of the Immigration and Nationality Act, 8 U.S.C. 1253(h), was simply to adopt the United Nations 1951 Convention and 1967 Protocol Relating to the Status of Refugees, not to broaden the scope of section 243(h).

(4) Newspaper and magazine articles submitted by the respondent regarding conditions in Ireland and Great Britain, which are of a general nature and which do not relate to the respondent specifically, will be accorded little evidentiary value, as this evidence is not probative on the issue of this particular alien being subject to persecution if deported to Ireland.

5) Evidence submitted by the respondent to establish persecution claim, while showing the difficulty of controlling terrorism in Ireland, does not show, 1) that the Irish government would be unable, if necessary, to protect the respondent, a defected member, from the Provisional Irish Republican Army, or, 2) that the government of Ireland would persecute him.

(6) Decisions resulting from extradition proceedings are not entitled to res judicata effect in later proceedings, and Board is thus not bound by United States Magistrate's determination, in extradition case, that respondent's crimes were political in nature.

CHARGE:

Order:  Act of 1952—Sec. 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under sec. 212(a)(19) [8 U.S.C. 1182(a)(19)]—obtained visa or other documentation by fraud

Sec. 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under sec. 212(a)(26) [8 U.S.C. 1182(a)(26)]—no valid nonimmigrant visa

ON BEHALF OF RESPONDENT:
Michael Maggio, Esquire
Goren & Maggio

ON BEHALF OF SERVICE:
Gerald S. Hurwitz
Appellate Trial Attorney

1801 Columbia Road, N.W.
Suite 100
Washington, D.C. 20009
Lynn Sonfield, Esquire
Nancy Howard, Esquire
San Francisco Neighborhood
   Legal Assistance Foundation
250 Columbus Avenue, Suite 200
San Francisco, California 44133

Brian H. Simpson
Trial Attorney

By: Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members

In a decision dated January 10, 1980, an immigration judge found the respondent deportable, but granted his applications for political asylum and for withholding of deportation. The Immigration and Naturalization Service appealed. Oral argument was heard before the Board on June 19, 1980. The appeal will be sustained.

The respondent, 32 years old, was born in Northern Ireland, and through this place of birth is a citizen of Great Britain. He also claims Irish citizenship through his grandmother's birth in Northern Ireland prior to 1921 (Tr. at 57). He last entered the United States on April 29, 1978, as a nonimmigrant visitor, using a passport bearing the name of Kevin O'Shaughnessy. An Order to Show Cause was issued against him on May 19, 1978, charging him with deportability under section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(1), as an alien excludable at entry under section 212(a)(19), 8 U.S.C. 1182(a)(19), for having procured a visa by fraud or willful misrepresentation, and as an alien excludable at entry under section 212(a)(26), as a nonimmigrant not in possession of a valid nonimmigrant visa.

At a deportation hearing begun on May 22, 1978, and completed on October 28, 1979, the respondent admitted the allegations in the Order to Show Cause, and conceded deportability. He alleged, however, that he was formerly a member of the Provisional Irish Republican Army (hereinafter the PIRA), that in 1977 he refused to participate in a PIRA scheme to kidnap an American for ransom, and that, due to this refusal, he had been tried by the PIRA, and sentenced to death. He claims that if he is forced to return to Ireland, he will be killed by the PIRA, and the Irish government will be unable to prevent it. He also claims that he would be subject to persecution by the Irish government. The immigration judge did not address the claim of persecution by the government, but he accepted the claims of persecution by the PIRA. After some discussion, he found the respondent eligible for asylum and withholding, and, determining that he could not, under his interpretation of *Matter of Dunar*, 14 I&N Dec. 310 (BIA 1973), deny

the applications on discretionary grounds, asylum and withholding were granted. We do not agree that the respondent has established that the government in Ireland will be unable or unwilling to protect the respondent from the PIRA. Nor do we believe that the respondent will suffer harm at the hands of the Irish government itself. The immigration judge's decision will accordingly be reversed.

An applicant for withholding of deportation under section 243(h) of the Act, 8 U.S.C. 1253(h), must show that, if deported, he would be subject to persecution based on his race, religion, nationality, membership in a particular social group, or political opinion. Section 243(h) of the Act, as amended by section 203(e) of the Refugee Act of 1980. To meet his burden of proof, an alien must demonstrate a clear probability that he will be persecuted if returned to his country. *Cheng Kai Fu v. INS*, 386 F.2d 750 (2 Cir. 1967, *cert. denied* 390 U.S. 1003 (1968). Under the Refugee Act, 243(h) relief is mandatory, not discretionary, once eligibility has been shown, unless an alien comes within one of the four exclusions now set forth in section 243(h).[1] Similarly, to qualify for asylum, an alien must show that he would be persecuted for one or more of the same five reasons mentioned above in describing section 243(h). *See also* 8 C.F.R. 208.5 regarding the burden of proof in asylum cases (effective June 1, 1980). A grant of asylum is discretionary under the Refugee Act, however. *See* section 101(a)(42) of the Act, 8 U.S.C. 1101(a)(42) (Section 201(a) of the Refugee Act of 1980); section 208 of the Refugee Act.[2]

Although in general 243(h) relief and asylum contemplate persecution of an alien by the government in the country to which he is returnable, the cases have held that a 243(h) claim can under certain circumstances be made where an alien claims that he will be persecuted not by a foreign government, but by an individual or an organization. In order to prevail with such a claim, there must be a showing that the government in power is either unable or unwilling to

---

[1] Subparagraph (2) of section 243(h) provides that relief under that section shall not apply to any alien if the Attorney General determines that—

(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

(B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or

(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

[2] We note that under present regulations the exceptions to 243(h) apply also to applicants for asylum. *See* 8 C.F.R. 208.7(f)(1)(iii), (iv), (v), (vi) (effective June 1, 1980).

protect the alien. *Rosa* v. *INS,* 440 F.2d 100 (1 Cir. 1971); *Matter of Pierre,* 15 I&N Dec. 461 (BIA 1975); *Matter of Tan,* 12 I&N Dec. 564 (BIA 1967). While these cases were decided prior to the enactment of the Refugee Act of 1980, we believe they are applicable to an alien seeking 243(h) relief, or asylum, under the new Act.

The current language of 243(h) is broader than it was previously, in that it now speaks not specifically of "persecution," as did the old 243(h), but rather provides for withholding of deportation if the Attorney General determines that an "alien's life or freedom would be threatened" in a country to which he may be sent. There is nothing in the legislative history of the Refugee Act, however, to indicate that the new, broader language of 243(h) was intended to change the application of the section so as to provide relief to those who fear harm from a nongovernmental group or individual. Rather, the legislative history reflects that Congress' intent in substituting "life or freedom would be threatened" for "persecution," was simply to adopt, almost verbatim, the United Nations 1951 Convention and 1967 Protocol Relating to the Status of Refugees (United Nations Treaty Series, Vol. 189, p. 37 and Vol. 606, p. 267. *See* Article 1, section A(2) and F, and Article 33 of the Convention), and to insure that withholding under the Act be construed consistently with the Protocol. *See* S. Rep. No. 96-256, 96th Cong., 2nd Sess. 17, reprinted in April 1980, *U.S. Code Cong. & Ad. News* 531; House Conference Rep. 96-781, Joint Explanatory Statement of the Committee of Conference, 96th Cong., 2nd Sess. 20, reprinted in April 1980, *U.S. Code Cong. & Ad. News* 535. We will therefore require under the new Act, as we did under the old law, that an alien must show either persecution by the government in the country to which he is returnable, or persecution at the hands of an organization or person from which the government cannot or will not protect the alien.

In the present case, the immigration judge stated that, "I am satisfied from the evidence presented that the Government of the Republic of Ireland is unable to control the activities of the PIRA and that if the respondent were to be returned to that country he would suffer persecution within the meaning of the Convention, Protocol and section 243(h)." In making this determination, the immigration judge did not discuss the evidence in any meaningful manner; indeed he did not specifically discuss any evidence at all, so we cannot tell on what basis the immigration judge made his decision. Our own review of the evidence, however, does not persuade us that the respondent is likely to suffer persecution if returned to Ireland.

The respondent has submitted voluminous documents in support of his persecution claim. Most of the documents are of a general nature, describing such things as Irish history and the workings of the IRA

and PIRA. Descriptions of numerous killings and violent incidents relating to the Irish conflict are given. There are also Amnesty International reports regarding allegations of brutality by the Irish police, and other documents relating to this alleged brutality. The vast majority of the documents relate either to conditions in Ireland and Northern Ireland generally, or to persons other than the respondent. Four documents, however, do relate specifically to the respondent. Two of these are articles from newspapers (the *Irish Times* on August 24, 1978, and the *San Francisco Sunday Examiner & Chronicle* on March 28, 1979) reporting on the respondent's extradition proceedings. Both articles refer briefly to the respondent's belief that the PIRA has a "contract" out on him to kill him. A third article, from the August 31, 1978, *Hibernia Review*, briefly describes the respondent's life, and indicates that he may have something to fear from the IRA. The final article, from the September 24, 1978, *San Francisco Sunday Examiner & Chronicle*, discusses the respondent's involvement in the 1972 bombing of a British army barracks and his subsequent break with the PIRA, but quotes several sources as saying that the IRA no longer has any interest in the respondent (these latter two articles speak of the respondent's involvement in the IRA, though in fact it was the PIRA in which the respondent was involved).

We do not give much weight to those articles submitted by the respondent which are of a general nature and do not in any way relate to the respondent himself. Such evidence is not probative on the issue of the likelihood of this alien being subject to persecution if deported to Ireland. *See generally Fleurinor* v. *INS*, 585 F.2d 129 (5 Cir. 1978); *Matter of Chumpitazi*, 16 I&N Dec. 629 (BIA 1978). Those articles which do relate to the respondent, together with his own statement and those of his mother, sister, and brother, indicate that the respondent may be wanted, or may at one time have been wanted, by the PIRA. However, even accepting this possibility as fact, no adequate showing has been made that the government in Ireland cannot control the PIRA or protect the respondent from that organization. We recognize that the PIRA and the IRA have engaged in numerous acts of violence in recent years, and that the Irish government has not been able to wholly control this terrorism. However, the evidence presented by the respondent simply does not convince us that the respondent would be in imminent peril for his life or limb if returned to Ireland, and that the government there would be unable to protect him against harm from the PIRA. While the evidence submitted reflects the difficulty of controlling terrorism in Ireland, it does not show that the government there, which is a stable one, would not be able, if necessary, to protect the respondent.

We turn next to the respondent's claim of persecution by the Irish

government itself. The immigration judge specifically limited his decision to anticipated persecution by the PIRA. However, as certain of the documents submitted by the respondent relate to alleged mistreatment of detainees and prisoners, especially those suspected of terrorist activity, by the Irish police (the "Garda"), and as the respondent has alleged on appeal that he would be persecuted by the Garda due to his former membership in the PIRA, it is appropriate to address this issue here.

We note at the outset that none of the evidence presented which relates to the actions of the Garda mentions the respondent specifically. Moreover, the evidence suggests that the Irish government has attempted to curb the abuses of the Garda. The respondent himself testified at his deportation hearing that when he was picked up and held by the Garda in 1974, he was not mistreated (Tr. at 47). He admits this again on appeal (respondent's brief at 15). However, the respondent argues that because he was a member of the PIRA and has knowledge of that organization, he will be questioned by the Garda if returned to Ireland. He further states that because of his fear of retaliation by the PIRA, he will refuse to give information to the Garda, as he did in 1974, and the Garda will therefore resort to physical and psychological coercion to force him to talk (brief at 17-18). These claims amount to no more than pure speculation. There is no evidence in the record, other than the respondent's own statements, to show that the Garda has any present interest in the respondent, or that, even if he were to be questioned, he would be mistreated or subject to undue coercion. The respondent has failed to meet his burden of establishing that he would be persecuted by the government of Ireland if deported to that country.

Much of the immigration judge's decision, as well as much of the discussion on appeal (at oral argument and in the briefs presented), related to the issue of whether the crimes committed by the respondent in Ireland were "political" crimes, and therefore not a bar to withholding of deportation or asylum.[3] Because we have determined that the respondent has not established that he would be persecuted within the meaning of the law, we need not reach the intriguing question of whether his crimes were of such a nature that they would not prevent him from obtaining the relief he now seeks. We will state in this regard, however, that we do not consider ourselves bound by the United States Magistrate's decision in extradition proceedings, in which he found that the crimes committed by the respondent were

---

[3] The law has made provision for precluding those suspected or convicted of nonpolitical crimes from obtaining 243(h) relief or asylum.

political, and that they therefore barred his extradition.[4]

Decisions resulting from extradition proceedings are not entitled to res judicata effect in later proceedings. *Hooker v. Klein,* 573 F.2d 1360 (9 Cir. 1978). *See also Jhirad v. Ferrandina,* 536 F.2d 478 (2 Cir. 1976). To begin with, the parties to the respondent's extradition case are not the same as the parties here, since the real party in interest in the extradition proceeding was the Republic of Ireland, not the United States, as it is in deportation proceedings. *See Ornelas v. Ruiz,* 161 U.S. 502 (1896); *Cleugh v. Strakosch,* 109 F.2d 330 (9 Cir. 1940). In order for res judicata to bar litigation of an issue in a subsequent proceeding, the two actions must involve the same parties (or those in privity with them). *Hooker, supra; Commissioner v. Sunnen,* 333 U.S. 591 (1948); *Pena-Cabanillas v. U.S.,* 394 F.2d 785 (9 Cir. 1968). Moreover, the res judicata bar goes into effect only where a valid, final judgment has been rendered on the merits (*Hooker, supra*), and it is well established that decisions and orders regarding extraditability "embody no judgment on the guilt or innocence of the accused, but serve only to insure that his culpability will be determined in another ... forum." *Jhirad, supra,* at 482. While the function of a deportation proceeding also is not to decide an alien's guilt or innocence of a crime, those cases holding that extradition decisions do not bind judicial bodies in later criminal proceedings are as applicable to subsequent deportation proceedings as they are to subsequent court proceedings. The issues involved in a deportation hearing differ from those involved in an extradition case, and resolution of even a common issue in one proceeding is not binding in the other. This Board has noted that extradition and deportation proceedings are distinct and separate. *See Matter of Perez-Jiminez,* 10 I&N Dec. 309 (BIA 1963). For these reasons, we do not consider ourselves in any way bound by the magistrate's decision denying extradition, and by his findings regarding the nature of the respondent's crimes.

The record reveals some confusion as to the country of deportation, due in part, it appears, to the lengthy and drawn-out nature of the respondent's deportation hearing. *See* Tr. at 5, 8, 21-22, 58-60, 91-93. Despite some comments at the hearing to the contrary, the immigration judge in his decision stated that he had at the hearing designated only the Republic of Ireland; no mention was made in the decision of the possibility of deportation to Great Britain. On appeal, the respondent and the Service have gone to considerable trouble to support their

---

[4] The immigration judge at the hearing expressed his concern over the possibility that the magistrate's decision regarding the political nature of the respondent's crimes might be binding on this issue (Tr. at 32). In his decision, at p. 7, he stated that he agreed with the magistrate's conclusions on this issue, but did not say he considered himself bound by them.

respective arguments regarding the designation of countries of deportation. The Service argues that both the Republic of Ireland and Great Britain had to be designated, and should have been designated by the immigration judge. The respondent argues that it was proper for the immigration judge to designate only Ireland. We need not decide which of these positions is correct. However, as the respondent's persecution claims at the hearing related only to Ireland, in the event that deportation to that country cannot be effected, the Service may file a motion to reopen these proceedings for further designation of the place of deportation and related applications.

ORDER: The appeal is sustained, and the respondent shall be deported to the Republic of Ireland.