# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2796

_____

Rosa De Castro-Gutierrez

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 12, 2013
Filed: April 22, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Rosa Mercedes De Castro-Gutierrez, a native and citizen of Colombia, petitions for review of the decision of the Board of Immigration Appeals ("BIA"), affirming the decision of the Immigration Judge ("IJ") to deny her claims for withholding of removal and relief under the Convention Against Torture ("CAT"). For the reasons discussed below, we deny the petition.

# I. BACKGROUND

De Castro-Gutierrez entered the United States on August 17, 2004, as a non-immigrant B-2 visitor with authorization to remain until February 16, 2005. She remained in the United States after that date without authorization. On April 14, 2010, immigration authorities issued a Notice to Appear, charging her as removable under section 237(a)(1)(B) of the Immigration Nationality Act ("INA"). De Castro-Gutierrez conceded her removability but filed an application for asylum and for withholding of removal. Because De Castro-Gutierrez filed her asylum application more than one year after her most recent arrival in the United States, the IJ determined she was ineligible for asylum. As a result, the IJ considered only whether she qualified for withholding of removal under INA section 241(b)(3) or for relief under the CAT.[1]

De Castro-Gutierrez stated that she fears persecution if she returns to Colombia based on her "membership within the Donado family, . . . a wealthy family of landowners" in Soledad, Colombia. De Castro-Gutierrez never married Eduardo Donado ("Eduardo"), the father of her daughter, but they had a romantic relationship and resided together in both Colombia and the United States. De Castro-Gutierrez also testified that she was a member of the country's Liberal party and that the Donado family also supported that party.[2] Before the IJ, De Castro-Gutierrez testified

---

[1]De Castro-Gutierrez did not appeal the agency's determination on asylum eligibility.

[2]De Castro-Gutierrez indicated on her asylum application that she fears persecution on the basis of her political opinion, but her accompanying personal statement and her testimony before the IJ mention only that she and the Donados were supporters of the Liberal party. She did not present any evidence of any threats or harm related to her political beliefs, and on appeal, she argues only that she "demonstrated that she had a cognizable claim based on her membership in the

that the Revolutionary Armed Forces of Colombia ("FARC") began targeting the Donados in 1994 because of their property holdings and wealth. In 1997, Eduardo and his brother learned that their father had been giving money and cattle to members of the FARC for several years. Eduardo and his brother attacked these men at the farm in 1997 and later stopped working on the farm because of threats from members of the FARC. In 1999, when the threats became more frequent, Eduardo's father sold his properties and cattle business, and Eduardo and his brother relocated to the United States, where they remain. On April 6, 2002, Eduardo's uncle, who owned some family properties, was shot. De Castro-Gutierrez did not know if there had been a police investigation, but she believes that the FARC was responsible.

On August 12, 2002, De Castro-Gutierrez received an anonymous phone call. The caller asked about Eduardo's whereabouts and told her that if she did not cooperate "they wouldn't be responsible [for] the lives of [her] daughter and [her]." The next day De Castro-Gutierrez and Eduardo's mother both received threatening phone calls. De Castro-Gutierrez reported this incident to the police, but on October 5, 2002, she received another phone call asking about Eduardo's location. The caller again threatened that if she did not disclose the information "they were not going to be responsible for the lives of [her] daughter and [her]self." De Castro-Gutierrez reported this call to the authorities as well and began moving from one house to another to protect herself and her daughter. Then, in December 2002, De Castro-Gutierrez was in the car with several co-workers when the car in which they were traveling was stopped. The man who stopped the car demanded that De Castro-Gutierrez cooperate, asked her about Eduardo, and threatened her and her daughter. De Castro-Gutierrez also reported this incident to the police, but the people involved

---

Donado family." Therefore, any argument related to persecution based on her political beliefs is waived. *See Averianova v. Mukasey*, 509 F.3d 890, 892 n.1 (8th Cir. 2007).

were never identified. De Castro-Gutierrez testified that despite these threats, she was never physically harmed.

De Castro-Gutierrez initially came to the United States with her daughter in 2002. Upon her return to Colombia in January 2003, she received threats "all the time." In September 2003, a caller told her that if Eduardo did not cooperate, they would take her daughter. De Castro-Gutierrez sent her daughter to live with a friend and reported the incident to police. Later that month, De Castro-Gutierrez was leaving a bank when two men robbed her at gunpoint and took her purse. The men did not say anything about the FARC. Nonetheless, De Castro-Gutierrez decided to leave Colombia after the robbery. De Castro-Gutierrez did not receive any more threats before her return to the United States in January 2004, where she and her daughter stayed for almost two months. They returned to Colombia when De Castro-Gutierrez's employer would not give her permission for a two-year sabbatical. She did not receive any more threats between the time of her return to Colombia and her last entry into the United States on August 17, 2004. De Castro-Gutierrez testified that she intended to return to Colombia, but, in June 2005, she decided to stay in the United States permanently after she learned that Eduardo's brother had been shot in Soledad. The person who shot him has not been found, but De Castro-Gutierrez believes there was a connection between his shooting and the 2002 shooting of Eduardo's uncle. De Castro-Gutierrez testified that she fears being killed or kidnapped if she were to return to Colombia and that she would need to move around Colombia in order to remain safe. She also acknowledged that the Colombian government had reduced the violence in her home country but contends that she cannot depend on the government to protect her.

De Castro-Gutierrez received a Notice to Appear from immigration authorities in April 2010, following an arrest and guilty plea on charges of felony identity theft. The IJ concluded that the evidence presented did not establish that De Castro-Gutierrez suffered past persecution or that she faced future persecution or torture if

removed to Colombia.  Accordingly, the IJ concluded that De Castro-Gutierrez was not eligible for withholding of removal or for relief under the CAT.  The BIA adopted the IJ's decision, added additional reasoning, and dismissed her appeal.

## II. DISCUSSION

We review questions of law *de novo*, and we review the agency's factual determinations under the substantial evidence standard, reversing only where a petitioner demonstrates "that the evidence was so compelling that no reasonable fact finder could fail to find in favor of the petitioner." *Turay v. Ashcroft*, 405 F.3d 663, 666-67 (8th Cir. 2005).  Where, as here, the BIA adopts the IJ's decision and adds its own reasoning, we review both decisions.  *Setiadi v. Gonzales*, 437 F.3d 710, 713 (8th Cir. 2006).

### A. Withholding of Removal

To qualify for withholding of removal, De Castro-Gutierrez must show that there is "a clear probability that [her] 'life or freedom would be threatened in [Colombia] because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" *Mompongo v. Gonzales*, 406 F.3d 512, 514 (8th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A)).  Persecution is an extreme concept, involving "the infliction or threat of death, torture, or injury to one's person or freedom." *Regalado-Garcia v. INS*, 305 F.3d 784, 787 (8th Cir. 2002).  Further, the alleged persecution must be inflicted either by the government of a country or by persons or an organization that the government is unable or unwilling to control. *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005).  "Persecution on account of membership in a particular social group" requires "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439

(BIA 1987). The BIA requires that a particular social group (1) have social visibility; (2) be defined with particularity to avoid indeterminate group membership; and (3) not be defined exclusively by the fact that its members have been targeted for persecution. *Matter of S-E-G*, 24 I. & N. Dec. 579, 583-84 (BIA 2008); *see also Davila-Mejia v. Mukasey*, 531 F.3d 624, 628-29 (8th Cir. 2008) (adopting the BIA's social visibility criteria).

As an initial matter, the IJ found that De Castro-Gutierrez failed to establish that it would not be reasonable for her to relocate as required under federal regulations outlining the eligibility requirements for withholding of removal. *See* 8 C.F.R. § 1208.16(b)(2) ("[A]n applicant cannot demonstrate that his or her life or freedom would be threatened if the asylum officer or immigration judge finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so."). De Castro-Gutierrez did not challenge this factual determination, and even assuming her appeal of this issue is not waived for lack of meaningful argument, *see Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004), we cannot conclude that the evidence compels a contrary conclusion, especially where De Castro-Gutierrez testified that she moved from Soledad to another part of Colombia in 2004 and successfully avoided further threats. Therefore, the IJ correctly concluded that De Castro-Gutierrez is not eligible for withholding of removal.

Even if the IJ's conclusion on the relocation requirement alone were not fatal to De Castro-Gutierrez's claim, we nonetheless agree that she is not eligible for withholding of removal. First, the IJ and BIA correctly concluded that De Castro-Gutierrez had not suffered past persecution that would entitle her to a presumption that she has a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.16(b)(1)(ii). The alleged incidents of persecution directed at De Castro-Gutierrez consist of receiving threatening phone calls, once being threatened in

person, and once being robbed at gunpoint. Substantial evidence supports the conclusion that these incidents do not rise to the level of persecution, even when considered cumulatively. *See Uli v. Mukasey*, 533 F.3d 950, 955 (8th Cir. 2008) ("Low-level intimidation and harassment alone do not rise to the level of persecution." (quoting *Makatengkeng v. Gonzales*, 495 F.3d 876, 882 (8th Cir. 2007))); *Quomsieh v. Gonzales*, 479 F.3d 606, 606 (8th Cir. 2007) ("Absent physical harm, the incidents of harassment, [and] unfulfilled threats of injury . . . are not persecution."); *Lengkong v. Gonzales*, 478 F.3d 859, 862-63 (8th Cir. 2007) (concluding that robbery "was simply a criminal act . . . rather than an act of persecution").

Second, substantial evidence supports the conclusion that De Castro-Gutierrez did not show a clear probability of future persecution based on a protected ground should she be returned to Colombia. *See* 8 C.F.R. § 1208.16(b)(2). De Castro-Gutierrez's claim that she has a well-founded fear of future persecution is based on her "membership within the Donado family, specifically, a wealthy family of landowners who have been victims of extortion, murder, attempted murder, internal displacement and intimidation for over fifteen years." However, the IJ correctly concluded that De Castro-Gutierrez's proposed social group is not cognizable. *See Davila-Mejia*, 531 F.3d at 628-29 (concluding that a social group defined as "family business owners" "is too amorphous to adequately describe a social group"); *In re A-M-E & J-G-U*, 24 I. & N. Dec. 69, 76 (BIA 2007) (concluding that a social group based on wealth is "too amorphous" and lacks the requisite social visibility); *see also Costanza v. Holder*, 647 F.3d 749, 754 (8th Cir. 2011) ("Constanza's family is no different from any other Salvadoran family that has experienced gang violence."). Moreover, even if "membership within the Donado family" were cognizable, De Castro-Gutierrez fails to establish that she would be deemed a member of the group in the first place as she never married Eduardo. Finally, De Castro-Gutierrez fails to establish that any future persecution would be carried out by the government or by a group the government is unable or unwilling to control. *See Menjivar*, 416 F.3d at

-7-

921. Although De Castro-Gutierrez cites State Department reports cataloging the continued FARC violence in Colombia, an alien seeking to establish persecution based on the violent conduct of private actors must show more than "difficulty controlling" private behavior. *Id.* (quoting *In re McMullen*, 17 I. & N. Dec. 542, 546 (BIA 1980)). Instead, she must show that the government "condoned it or at least demonstrated a complete helplessness to protect the victims." *Id.* (quoting *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000)). To the contrary, State Department reports and news articles about the country demonstrate that the government has taken steps to control the FARC and similar groups. Based on the above factual determinations, for which we find substantial support in the record, the IJ did not err in concluding that De Castro-Gutierrez was not entitled to withholding of removal.

**B. CAT Protection**

To be entitled to protection under the CAT, an alien must establish that it is "more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture is defined narrowly as an extreme form of cruel and inhuman treatment intentionally inflicted by or with the acquiescence of a person acting in an official capacity." *Sheikh v. Gonzales*, 427 F.3d 1077, 1082 (8th Cir. 2005). De Castro-Gutierrez's CAT claim is based on the same evidence as her withholding of removal claim. We therefore conclude that De Castro-Gutierrez has failed to establish that she is entitled to relief under the CAT. *See Clemente-Giron v. Holder*, 556 F.3d 658, 662 (8th Cir. 2008) ("If the applicant's CAT claim relies on the same evidence as her . . . withholding of removal claim[], the court's adverse decision on . . . withholding of removal will also be determinative of the CAT claim.").

## III. CONCLUSION

For the foregoing reasons, we deny De Castro-Gutierrez's petition for review.

_____