# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1684

_____

| | | |
|---|---|---|
| Sylvia Tieneke Lengkong; | * | |
| Ferdinand Jacobus Rondonuwu, | * | |
| | * | |
| Petitioners, | * | Petition for Review of an |
| | * | Order of the Board of |
| v. | * | Immigration Appeals. |
| | * | |
| Alberto Gonzales, Attorney General | * | |
| of the United States of America, | * | |
| | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: December 13, 2006
Filed: March 1, 2007

_____

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Sylvia Tieneke Lengkong and Ferdinand Jacobus Rondonuwu (hereinafter referred to by their last names or collectively as "the petitioners") petition for review of an order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of their application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We deny the petition.[1]

_____

[1]Petitioners' motion to supplement the administrative record is also denied. See 8 U.S.C. § 1252(b)(4)(A) (2006); Ming Ming Wijono v. Gonzales, 439 F.3d 868, 875 n.4 (8th Cir. 2006)

**I.**

Lengkong and her husband, Rondonuwu, both natives and citizens of Indonesia, entered the United States on visitor visas in 2001. They subsequently remained beyond their authorized stay, and the Department of Homeland Security commenced removal proceedings against them in July 2003. Lengkong and Rondonuwu conceded that they were removable, but applied for asylum, withholding of removal, protection under CAT, and voluntary departure.

Lengkong and Rondonuwu's application was based primarily on their assertion that they had previously faced persecution in Indonesia because of their Christian faith and Lengkong's leadership positions with a Protestant church in Indonesia, where she had served as a deacon and elder. Lengkong described four such incidents of persecution in her application and testimony before the IJ. In the first incident, which occurred on May 12, 1998, Lengkong and her husband were traveling in their car when it was stopped by a group of men wielding sticks. During the altercation, one of the men apparently demanded that they remove the vehicle's bumper sticker, which read "Jesus is my Savior." The men broke windows in the car before Lengkong and Rondonuwu could drive away. In the second incident, occurring on May 13 and 14, 1998, a group of people threw stones at the petitioners' house and vandalized their fence. In the third incident, which occurred on November 2, 1999, Lengkong was participating in the choir at a Protestant church service when a group of people entered the church, began vandalizing it, and eventually burned it down. Lengkong was able escape from the church unharmed. In the fourth incident, which occurred in September of 2001, a man approached Lengkong while she was riding on a bus, pressed a pocket knife against her, and asked her if she was a Christian. She subsequently gave him a gold ring and he left without harming her. Lengkong stated

that she believed all of the attacks were carried out by Muslims because of statements made by the attackers and reports she read in the newspapers.[2]

In her application and testimony, Lengkong also described incidents involving other Christian friends and colleagues who had been attacked.[3] She additionally submitted various reports and articles that contained country information and detailed the religious conditions and violence in Indonesia.

The IJ denied all claims for relief, except voluntary departure, concluding that even though Lengkong and Rondonuwu appeared to be generally credible, they had failed to meet their burden of establishing that they had suffered past persecution or that they had a well-founded fear of future persecution in Indonesia on account of their religion. The IJ additionally concluded that the petitioners had failed to show that it was more likely than not that they would be tortured if they return to Indonesia. The BIA affirmed the IJ's decision.

## II.

Lengkong and Rondonuwu contend that the IJ and BIA erred in denying their application for asylum, withholding of removal, and protection under CAT. We review a BIA's determination under the substantial evidence standard and will reverse only if "it would not be possible for any reasonable fact-finder to come to the conclusion reached by the administrator." <u>Menendez-Donis v. Ashcroft</u>, 360 F.3d

---

[2]Lengkong testified that during the first three incidents the attackers were yelling an Islamic phrase that is said to mean "God is the Greatest." During the attack on their home, Lengkong also testified that the attackers yelled, "Finish the Christians."

[3]These attacks, as recounted by Lengkong, involved a Protestant pastor who was stabbed by a group of Muslims, a Protestant pastor who was burned with his family inside a church, and a Protestant deacon whose house was destroyed by a group of Muslims.

915, 918 (8th Cir. 2004). Because the BIA adopted the IJ's decision and added reasoning of its own, we review both decisions together. Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006).

**A.**

To be eligible for asylum, an applicant must demonstrate that he or she is a refugee – a person who is unwilling or unable to return to his or her home country "'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Berte v. Ashcroft, 396 F.3d 993, 996 (8th Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A)). Persecution has been generally defined as "'the infliction or threat of death, torture, or injury to one's person or freedom, on account of' one of the grounds enumerated in the refugee definition," id. (quoting Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002)), and must be "inflicted either by the government . . . or by persons or an organization that the government was unwilling or unable to control." Valioukevitch v. INS, 251 F.3d 747, 749 (8th Cir. 2001). If past persecution is established, the applicant is entitled to a presumption of a well-founded fear of future persecution, which can be rebutted by evidence that country conditions have changed. Hasalla v. Ashcroft, 367 F.3d 799, 803 (8th Cir. 2004) (citing 8 C.F.R. § 1208.13(b)(1)(i) (2003)). Absent evidence of past persecution, an applicant must establish a well-founded fear of persecution that is "both subjectively genuine and objectively reasonable." Eta-Ndu v. Gonzales, 411 F.3d 977, 983 (8th Cir. 2005).

The BIA concluded that the petitioners had failed to meet their burden of establishing past persecution. We cannot say that these findings were erroneous given the circumstances. First, as noted by the IJ, it is not evident that all the incidents described were motivated by the petitioners' religious beliefs. The IJ found that the attack on the petitioners' home was the result of riots that were occurring throughout the city of Jakarta, Indonesia – a reasonable determination given the widespread

violence and unrest occurring in Jakarta at that time.[4] The same could be said for the vandalism to the petitioners' vehicle, which also occurred during the riots. Interpreted as such, these incidents, arising from the general unrest in Jakarta, would not support a claim of persecution. See Mohamed v. Ashcroft, 396 F.3d 999, 1003 (8th Cir. 2005) ("Harm arising from general conditions such as anarchy, civil war, or mob violence will not ordinarily support a claim of persecution."). The IJ also found that the attack of Lengkong in the bus was simply a criminal act of robbery, rather than an act of persecution, a determination that was not unreasonable given the fact that Lengkong's persecution claim was premised only on the fact that she was wearing a cross necklace and was asked if she was a Christian. Cf. Ming Ming Wijono v. Gonzales, 439 F.3d 868, 873 (8th Cir. 2006) (holding that racist statements made by attackers during a robbery were alone "insufficient to establish a nexus between the attacks and a protected ground"). The record therefore contained sufficient evidence to support the BIA's determination that these incidents were "apparently random in nature," and as such did not require a finding of past persecution. See Ngure v. Ashcroft, 367 F.3d 975, 990 (8th Cir. 2004) ("[E]vidence of isolated violence does not compel a finding of persecution.").

Second, the injuries suffered by the petitioners do not conclusively rise to the level of persecution. As we have previously noted, "[p]ersecution is an extreme concept and does not include low-level intimidation and harassment." Zakirov v. Ashcroft, 384 F.3d 541, 546 (8th Cir. 2004). "Even minor beatings or limited detentions do not usually rise to the level of past persecution." Setiadi, 437 F.3d at 713. The prior incidents described by the petitioners involved minor damage to their

---

[4]According to the record, thousands of buildings and vehicles were destroyed and hundreds of people were killed during the riots that occurred on May 12-15, 1998, in Jakarta. THE EUROPA WORLD YEAR BOOK 2008 (2002).

car and home, a robbery, and fleeing from a church unharmed.[5] While we recognize the seriousness of these events, they do not compel a finding of persecution.

Even if the petitioners had established past persecution, the record contains substantial evidence supporting the BIA's finding that the petitioners did not have a well-founded fear of future persecution due to the change in circumstances in Indonesia. The country information provided in the record notes that Protestantism is one of the five recognized faiths in Indonesia, that the Indonesian government is making considerable progress in reducing interreligious violence and prosecuting those involved, and that interreligious tolerance and cooperation are increasing. Although the record also shows that such violence still exists in Indonesia, we agree with the IJ's statement that "the general tenor of the reports is that the government is making progress in promoting religious freedom and trying to bring to justice various attackers and has done so in many case[s]." In addition, the petitioners' adult children, who are also Christian, continue to live in Indonesia without incident – a fact that further undermines the petitioners' claim of future persecution. See Krasnopivtsev v. Ashcroft, 382 F.3d 832, 839 (8th Cir. 2004) ("The reasonableness of a fear of persecution is diminished when family members remain in the native country unharmed, and the applicant himself had not been singled out for abuse.").

In sum, we conclude that there was substantial evidence in the record to support the BIA's denial of the petitioners' asylum claim.

---

[5]The petitioners attempt to use the attacks on Lengkong's friends and colleagues to further support their claim of past persecution. We are, however, precluded from considering these incidents when determining past persecution. Mohamed v. Ashcroft, 396 F.3d 999, 1003 (8th Cir. 2005) ("To be eligible for asylum, the harm suffered must be particularized to the individual . . . .").

**B.**

Because the petitioners have failed to meet the standard for asylum, they also fail to meet the more rigorous standard for withholding of removal. Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005). Furthermore, the conclusions that support a denial of the petitioners' asylum and withholding of removal claims also support the denial of their CAT claims. See Ming Ming Wijono, 439 F.3d at 874.

The petition for relief is denied.

_____