# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2345

_____

| | | |
|---|---|---|
| Anita Dona Uli, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of |
| v. | * | the Board of Immigration Appeals. |
| | * | |
| Michael B. Mukasey,[1] Attorney | * | |
| General of the United States. | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 14, 2008
Filed: July 18, 2008

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Anita Dona Uli, a Christian native and citizen of Indonesia, petitions for review of an order of the Board of Immigration Appeals ("the Board") affirming an immigration judge's (IJ) denial of her application for asylum, withholding of removal and Convention Against Torture (CAT) protection. For the reasons discussed below, we deny the petition.

_____

[1]Michael B. Mukasey has been appointed Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

## I. *Background*

Uli last entered the United States on November 26, 2002, as a nonimmigrant visitor. In January 2003, she filed an application for asylum, and one year later, removal proceedings began. Uli was charged with being removable, pursuant to Immigration and Nationality Act (INA) section 237(a)(1)(B), as an alien who remained in the United States for a time longer than permitted. At a hearing on February 4, 2004, Uli conceded removability.

On March 4, 2005, she filed an updated application for asylum. Uli appeared at an additional hearing on April 8, 2005, where she testified in support of her application for relief. Uli testified that she was born and raised in Jakarta, Indonesia. As a Catholic, Uli and her family attended church every week on Wednesdays and Sundays, and the church she attended was only about 200 meters from her family's home.

Uli claims religious persecution as a ground for relief. The factual backdrop to Uli's asylum application includes the May 1998 Indonesian riots. Uli testified that during these riots, her family home was burned. Early in the morning on the day her home was burned, Uli smelled smoke and saw hundreds of Muslim people walking down the street shouting. Uli's mother took her and her sister to a hiding place under a nearby bridge; while hiding Uli watched her house burn. In addition to Uli's family home, her church was also destroyed in a fire. Uli testified that she and her sister stayed under the bridge where their mother had taken them until six o'clock that night. Uli's mother returned to the family home to save important papers and to help Uli's father and brother keep rioters away from the children's hiding place under the bridge.

Uli testified that during this day of rioting, her mother saw other people being abused. Her father was beaten during the incident and, afterwards, went insane. Her brother was stabbed in the stomach during the riots and has never fully recovered from the wound. Following these events, none of Uli's family members went to the hospital

or saw a doctor for treatment. Uli testified that, as far as she knows, the police did not come to the neighborhood during the riots, made no arrests and conducted no investigation.

After the riots, according to Uli's testimony, her family remained in the same location and rebuilt their house. Uli testified that she has heard that new threats were made in 2003 to burn the house. Because Uli's church had burned down, she attended various other churches. She recalls seeing cars vandalized while she attended church.

In addition to religious persecution based upon the riots, Uli also requests relief based on sexual harassment that she suffered in Indonesia. She testified that she was sexually assaulted, including being groped on the street. Once while on an elementary school bus, Uli awoke with the Muslim conductor of the bus grabbing and touching her breasts. Uli was not wearing Muslim garb at the time, and she believed that she was targeted because she is Christian. In 2000, while on a college trip, she stayed in a room with two other people and she woke up with a Muslim man on top of her—she kicked him off. Uli was the only Christian girl on this trip. Uli also testified that she suffered sexual harassment from her work supervisor in 2001. Uli made no formal complaint but instead had her brother and father drive her to work for protection. Uli had heard that her cousin was raped and that the police merely sent her cousin home. Uli did not include either the sexual harassment or her brother's and father's riot related injuries in her original asylum application.

Uli has made two trips to the United States. First, in February 2001, she came with her parents. Uli traveled with a visitor's visa, and she did not tell anyone at the consulate about her problems in Indonesia. Although Uli had a six-month visa, she and her parents decided to return to Indonesia after one month in the U.S. to attend to her brother. Uli accompanied her parents back to Indonesia to help them travel. In November 2002, Uli returned to the United States —this time for her sister's wedding. As before, she did not mention fears to the consulate when getting her second visa.

Uli's older sister, Artati Triani Steward, also testified on her behalf. Steward, now a Christian Scientist, came to the United States in 1999 and is a permanent resident through marriage. Uli's sister testified that her brother had tried to obtain a visa and had been unable to, and her parents remained there because of their son. Steward recounted the problems that her family had experienced during the May 1998 riots, including the damage to their church and her brother's injury. She also testified that she was aware that Uli had been sexually harassed in Indonesia. Steward stated that she had made two return trips to Indonesia, once in 2002 and again in 2004 when she stayed for three weeks in her family home. Steward knew of no harm to her family since 1998 but said that there had been threats to burn the family home again.

On October 11, 2005, the IJ issued a decision finding Uli removable as charged, denying her applications for asylum, withholding of removal and CAT protection, and granting her voluntary departure. The IJ did not find Uli's evidence credible. The IJ based this credibility determination on the absence of critical fact allegations from Uli's first asylum application and asylum interview. Uli did not mention sexual abuse nor did she mention the injuries suffered by her father and brother during the 1998 riots in her initial application. The IJ found that, in light of Uli's credibility issues, she needed to present corroborating evidence and that she did not.

The IJ also questioned Uli's subjective fear in returning to Indonesia because she had come to the United States in 2001 stayed one month and returned to Indonesia. Additionally, Uli's sister, who is also a Christian, made two trips back to Indonesia in recent years apparently without incident. The IJ stated further that even if Uli had established some level of past persecution, circumstances have changed substantially since 1998. The IJ noted that the 1998 riots affected many societal groups, not exclusively religious, and violence in Jakarta has not approached that level since that time. Because Uli's asylum claim failed, the IJ found necessarily that the petition for withholding of removal also failed. The IJ also stated there was no evidence of torture for the CAT claim. The IJ then granted voluntary departure.

On May 10, 2007, the Board, while not endorsing all aspects of the IJ's decision, affirmed the decision of the IJ and dismissed the appeal. The Board did find some merit with the issues raised by Uli on appeal—in particular, her contention that the IJ erred in basing its adverse credibility finding on her reluctance to recount her sexual harassment experience. The Board noted that supplementing an initial asylum application does not lead directly to an adverse credibility finding. The Board then stated that even taking Uli's testimony as true, the Board still agreed with the IJ that she had not demonstrated eligibility for relief.

The Board found that Uli's "major problems" occurred during Indonesia's 1998 riots and that the record indicated that since the time of that civil unrest, the situation in Indonesia had improved. Citing the 2004 Department of State International Religious Freedom Report, two other Department of State reports on Indonesia, and the 2004 Country Report on Human Rights Practices—all submitted by the government—the Board found that the record indicated that the population in Indonesia enjoys a high degree of religious freedom, Christians make up almost nine percent of the population and Catholics make up three percent, and religious attacks continue to decline. The Board acknowledged that Uli had endured unfortunate experiences, but found that they did not rise to the level of past persecution. The Board concluded that, while it did not endorse all aspects of the IJ's opinion, the IJ reached the correct result. Accordingly, the Board dismissed the appeal and ordered that Uli be permitted to voluntarily depart. Uli then filed this petition for review.

## II. *Discussion*

Uli challenges the Board's denial of her application for asylum and withholding of removal.[2] Uli argues that because the IJ and the Board applied an incorrect legal

[2]Uli did not raise her CAT claim in her brief on appeal and therefore has abandoned the issue. *See Anderson v. Larson*, 327 F.3d 762, 771 (8th Cir. 2003) (failure to raise or discuss an issue in the briefs is deemed to be an abandonment of the issue).

standard, we must remand the case for further consideration under the correct standard.

We review the Board's legal determinations de novo, according substantial deference to the Board's interpretation of the statutes and regulations it administers. *Hassan v. Gonzales*, 484 F.3d 513, 516 (8th Cir. 2007). "A denial of asylum is reviewed for abuse of discretion; underlying factual findings are reviewed for substantial support in the record." *Id.* We must uphold an IJ's factual determinations if supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Id.*

"Any alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum . . . ." 8 U.S.C. § 1158(a)(1). To qualify for asylum, the applicant must establish that he or she is a refugee as defined in the statute. 8 C.F.R. § 1208.13. Pursuant to section 101(a)(42) of the INA, a refugee is "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A).

"If past persecution is established, an alien will be presumed to possess a well founded fear of future persecution and the burden shifts to the government to show by a preponderance of the evidence that conditions in the applicant's country have changed to such an extent that the applicant no longer has a well founded fear of being persecuted if he or she were to return." *Hasalla v. Ashcroft*, 367 F.3d 799, 803 (8th Cir. 2004).

If an applicant attempts to establish a well-founded fear of future persecution without having shown past persecution then "an alien must show the fear is both subjectively genuine and objectively reasonable . . . To overcome the BIA's finding that [the applicant] lacked a well-founded fear of persecution, [the applicant] must show the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Ghasemimehr v. I.N.S.*, 7 F.3d 1389, 1390 (8th Cir. 1993) (internal citations and quotations omitted).

"Persecution is the infliction or threat of death, torture, or injury to one's person or freedom, on account of race, religion, nationality, membership in a particular social group, or political opinion." *Regalado-Garcia v. I.N.S.*, 305 F.3d 784, 787 (8th Cir. 2002). Persecution is an extreme concept and "[l]ow-level intimidation and harassment alone do not rise to the level of persecution." *Makatengkeng v. Gonzales*, 495 F.3d 876, 882 (8th Cir. 2007) (quoting *Berte v. Ashcroft*, 396 F.3d 993, 996 (8th Cir. 2005)).

First, Uli claims that the Board erred by not reversing the IJ's adverse credibility determination. The Board's decision, however, did not rely on the IJ's credibility analysis and, in fact, rejected it. The Board assumed Uli's testimony was credible. The IJ based its adverse credibility determination on Uli's omitting sexual harassment from her initial asylum application. The Board corrected the IJ by stating it would treat Uli's testimony as true. Therefore, the Board did not err with respect to the credibility determination because it assumed Uli's account to be credible.

Second, Uli argues that the Board erred by not specifically addressing whether she had established past persecution. The Board's opinion, in determining Uli's eligibility for asylum, had to proceed according to the analytical framework of 8 C.F.R. § 1208.13. *Sholla v. Gonzales*, 492 F.3d 946, 951 (8th Cir. 2007). When an applicant for asylum alleges past persecution by state officers on account of a protected ground, the allegation raises the threshold question of whether she has met

her burden of proof to establish past persecution, which would entitle her to the presumption of a well-founded fear of future persecution. *Id*. If the administrative opinion we are reviewing ignores the initial step of determinating past persecution, generally we will remand that case to the Board to make a determination as to past persecution and apply the correct legal standard. *Id*.

Here, although the Board was less than explicit in its discussion of past persecution, we conclude that we need not remand the case on this issue. The Board did not explicitly state that Uli's experience during the May 1998 riots amounted to past persecution, instead the Board stated that her "major problems" took place during the riots. However, a later portion of the opinion implies that the Board found, or assumed, Uli's experience during the riots did constitute past persecution. We draw this inference from the Board's discussion of Uli's sexual harassment claims—"the other problems cited [the sexual harassment claims] by the respondent, while unfortunate, simply do not rise to the level of past persecution." Here, the Board indicates that it was aware of the threshold question of whether Uli established past persecution and that as to the events during the riots, unlike the sexual harassment claims, Uli had established past persecution.

The Board specifically found Uli's sexual harassment allegations did not constitute past persecution. We have stated that "[p]ersecution is the infliction or threat of death, torture, or injury to one's person or freedom, on account of race, religion, nationality, membership in a particular social group, or political opinion." *Regalado-Garcia*, 305 F.3d at 787. "[P]ersecution is an extreme concept and does not include low-level intimidation and harassment. Even minor beatings or limited detentions do not usually rise to the level of past persecution." *Lengkong v. Gonzales*, 478 F.3d 859, 863 (8th Cir. 2007) (internal quotations and citations omitted). We conclude that the Board's decision is supported by substantial evidence and that the conduct Uli describes does not rise to the level of extreme conduct contemplated by

-8-

"persecution" within the meaning of the INA. The record evidence does not compel the opposite finding.

Third, Uli argues that the Board improperly failed to shift the burden of proving a fundamental change in circumstances to the government. Uli argues that if the Board did implicitly find that Uli had established past persecution on account of the 1998 riots, it was then required to shift the burden to the government to show a fundamental change in circumstances. Under our case law, "[i]f past persecution is established, an alien will be presumed to possess a well founded fear of future persecution and the burden shifts to the government to show by a preponderance of the evidence that conditions in the applicant's country have changed to such an extent that the applicant no longer has a well founded fear of being persecuted if he or she were to return." *Hasalla*, 367 F.3d at 803. Again here, as above, the Board did not explicitly lay out the distinct parts of the regulatory framework. The government argues that the Board implicitly shifted the burden to the government by using evidence that had been submitted by DHS to rebut the presumption that Uli had a reasonable fear of future persecution. We agree.

Uli brings to our attention a recent Board decision, *Matter of D-I-M,* in which the Board remanded an asylum case to the IJ because "[t]he Immigration Judge did not explicitly apply the presumption and failed to shift the burden of proof to the DHS to prove by a preponderance of the evidence that the respondent can avoid future persecution by relocating to another part of Kenya . . . [i]nstead, the Immigration Judge concluded, without specific references to the voluminous background materials in the record, that the respondent could safely relocate to a metropolitan area of Kenya." 24 I. & N. Dec. 448, 451 (BIA 2008). Unlike *Matter of D-I-M*, the Board here made specific references to the materials in the record and those materials were submitted by DHS. Therefore, although a more explicit discussion of the regulatory framework and burden shifting is preferable, we conclude that the Board did shift the

burden to DHS to rebut the presumption that Uli had a reasonable fear of future persecution by relying on DHS evidence.

Uli also argues that the Board's reliance on isolated and conclusory statements about changed country conditions in the country reports was erroneous. However, as we recently held in *Lengkong*, a similar case, evidence of changed country conditions in country reports rebut the presumption of well-founded fear of persecution in Indonesia. *Lengkong*, 478 F.3d 859. In *Lengkong* we held that there was substantial evidence in the record to support the Board's denial of an asylum claim of Christian petitioners in Indonesia based on events surrounding the 1998 riots because country reports in the record showed conditions improved and, also, petitioner's children still lived in Indonesia. *Id*. at 863. In an alternative holding we stated that:

> [e]ven if the petitioners had established past persecution, the record contains substantial evidence supporting the BIA's finding that the petitioners did not have a well-founded fear of future persecution due to the change in circumstances in Indonesia. The country information provided in the record notes that Protestantism is one of the five recognized faiths in Indonesia, that the Indonesian government is making considerable progress in reducing interreligious violence and prosecuting those involved, and that interreligious tolerance and cooperation are increasing. Although the record also shows that such violence still exists in Indonesia, we agree with the IJ's statement that the general tenor of the reports is that the government is making progress in promoting religious freedom and trying to bring to justice various attackers and has done so in many case[s]. In addition, the petitioners' adult children, who are also Christian, continue to live in Indonesia without incident–a fact that further undermines the petitioners' claim of future persecution.

*Id*. This case is similar—Uli is an Indonesia Christian who was harmed during the May 1998 riots, and her parents and brother still live in Indonesia.[3] We have stated

---

[3]Uli's father and brother were injured during the riots, but the record does not contain evidence that they have since been harmed.

that "[t]he reasonableness of a fear of persecution is diminished when family members remain in the native country unharmed, and the applicant himself had not been singled out for abuse." *Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 839 (8th Cir. 2004).

We conclude that the record evidence does not compel a reversal. The Board assumed Uli to be credible and that she faced persecution in 1998 but found DHS successfully rebutted the presumption of a reasonable fear of future persecution because conditions for Christians have improved in Indonesia, and Uli's family still lives there safely. Although the Board could have been more explicit about shifting the burden to the government, the Board's reliance on the government's evidence in rebutting the presumption of a fear of future persecution is sufficient in this case. Therefore, the Board did not err in denying Uli's asylum application.

Finally, we conclude that the Board did not err in denying Uli's request for withholding of removal.

> An alien may not be removed if the alien shows there is a clear probability that his life, or freedom would be threatened in [the alien's] country because of the alien's race, religion, nationality, membership in a particular social group or political opinion. The standard for withholding of removal, a clear probability of persecution, is more rigorous than the well-founded fear standard for asylum. An alien who fails to prove eligibility for asylum cannot meet the standard for establishing withholding of removal.

*Turay v. Ashcroft*, 405 F.3d 663, 667 (8th Cir. 2005) (internal quotations and citations omitted). Because Uli did not meet the standard for asylum, she perforce has not met the higher standard required for withholding of removal.

### III. *Conclusion*

For the reasons stated above, we deny the petition for review.

_____