

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-2009

# Halim Handoko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2396

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Halim Handoko v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1257.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1257

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2396
_____

HALIM HANDOKO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A96 267 550)
Immigration Judge:  Honorable Miriam K. Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 20, 2009

Before: RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed June 1, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

Halim Handoko petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing his appeal of the Immigration Judge's ("IJ") decision denying his

applications for relief from removal.  We will deny the petition for review.

Handoko is a native and citizen of Indonesia.  He came to the United States in 2002 as a visitor.  In 2003, the Immigration and Naturalization Service issued a notice to appear charging that Handoko was subject to removal because he stayed in the United States longer than authorized.  Through counsel, Handoko conceded his removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture.

Handoko, who is Chinese, testified that he was a Buddhist when he lived in Indonesia, and that he became a Christian in 2003, while living in the United States.  Handoko stated that he would have problems practicing Christianity if he returned to Indonesia because the church that he used to attend was burned down, and there have been difficulties rebuilding the church.  Handoko explained that, although he was Buddhist when he lived in Indonesia, he went to a Christian church because he was learning Christianity with his daughter.  He stated that he had no problem practicing Christianity in Indonesia.  Handoko also testified that he would continue to practice Christianity if he returns to Indonesia, but that he would have to go to church in a group because native Indonesians would threaten him if he went to church alone.

Handoko further testified that he had problems in Indonesia because he is Chinese.  He explained that in 1975 he was required to pay higher fees and provide more documentation than native Indonesians in order to obtain a national identification card.

2

Handoko stated that on May 13, 1998, he witnessed rioting in Jakarta against the Chinese, which occurred in the residential complex where he lived. Handoko stated that the majority of residents, including himself, went to stay in a hotel where there was better security. After a month, Handoko returned to the complex and discovered that his home and most of his neighbors' homes had been burned down. Handoko lived with his parents and sold the property where his home had been in 2002, a month before coming to the United States.

Handoko testified that after the riots the Chinese were the targets of street crime, and that the Chinese had to pay higher fees to the police to investigate such crimes. Handoko further stated that he did not leave China for four years after the riots because only he and his wife were granted visas, and that he needed to support his children, who were still in school. Handoko testified that he still fears that he will be harmed if he returns to Indonesia. Handoko stated that two days before the hearing his daughter, who lives in Indonesia, told him that she was robbed at knife point on a bus. On cross-examination, Handoko stated that there were other minor incidents that happened to him and his family when he lived in Indonesia, including "robberies, muggings and frauds." A.R. at 144.

The IJ found Handoko not credible "in significant part" with regard to his being a Christian in Indonesia, noting that his testimony was unclear and inconsistent. IJ's Dec. at 13. The IJ explained that Handoko testified that he had no problems practicing

3

Christianity in Indonesia, that he also spoke about Buddhism, and that he did not adequately explain why he had to go to church in a group to be safe. The IJ stated that Handoko misled the court by stating in his asylum application that he had faced many problems in Indonesia as a Christian. The IJ also noted that Handoko did not adequately explain why he did not provide his government identification card, which records a person's religion. The IJ believed that Handoko deliberately omitted the card because it would have established that he was a Buddhist in Indonesia. In addition, the IJ stated that Handoko did not explain why he failed to produce evidence that his family in Indonesia were Christians. Although Handoko had testified that his children converted to Christianity, his daughter's government identification card reflected that she was Buddhist, and his daughter did not state that she is Christian in a letter to the court.

The IJ also noted that Handoko did not report any harm by native Indonesians in his asylum application or on direct examination, other than the loss of his home during the May 1998 riots and governmental discrimination in obtaining documents. The IJ stated that on cross-examination Handoko stated for the first time that he was the victim of crime by native Indonesians. The IJ believed that Handoko was embellishing his claim. The IJ further stated that, even if Handoko and his daughter were robbed, these incidents did not rise to the level of persecution, and Handoko did not establish that the robberies were related to their ethnicity or alleged religion. The IJ also found that the loss of Handoko's home during the riots was not so severe given that he continued to live and

4

work in Indonesia for four years before coming to the United States. Finally, the IJ noted that this Court had found no pattern or practice of persecution against ethnic Chinese Christians in Indonesia, and that there have been further improvements between the government and ethnic Chinese, as reflected in the 2005 United States Department of State Country Report. The IJ denied Handoko's applications for relief from removal based on the adverse credibility finding and, alternatively, Handoko's failure to satisfy his burden of proof.

The BIA adopted and affirmed the IJ's decision. The BIA rejected Handoko's challenges to the IJ's adverse credibility finding and concluded that, in any event, Handoko was unable to show that the alleged harms amounted to past persecution. The BIA also rejected Handoko's claim that the IJ violated his due process rights by not deciding whether he had a well-founded fear of future persecution. The BIA noted that it did not entertain constitutional challenges, that there was no presumption of future persecution where he had not established past persecution, and that he was unable to carry his burden of proof on this issue given the findings of fact, including the improved country conditions. This petition for review followed.[1]

We review factual findings, including adverse credibility findings, for substantial evidence. Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003). Under the substantial evidence standard of review, factual determinations will be upheld unless a

---

[1]The BIA noted that Handoko did not challenge the IJ's denial of relief under the Convention Against Torture. This ruling is not at issue.

5

reasonable factfinder would be compelled to conclude to the contrary.  Id.

Handoko argues that the IJ's adverse credibility determination was erroneous, contending, among other things, that he testified that he was baptized in the United States in 2003, that he was considered a Buddhist in Indonesia, and that he attended a Christian church with his daughter.  He states that he testified that if he returns to Indonesia he would be allowed to attend a Christian church, but he would have to travel in a group for fear that local Muslims would prevent him from entering the church.  Handoko also concedes in his brief that there was no evidence that the robberies of himself and his daughter were on account of a protected ground, and he argues that, because the robberies are irrelevant, their omission from his asylum application was not a basis for finding him not credible.

We need not address the adverse credibility finding in this case because substantial evidence supports the IJ's alternative conclusion that, even if credible, Handoko did not satisfy his burden of proof to establish past persecution.  The BIA also concluded that Handoko was unable to show that the alleged harms amounted to past persecution. Handoko did not establish past persecution based on his religion.  He testified that he had no problems practicing Christianity in Indonesia.  The record also does not compel the conclusion that Handoko suffered past persecution on account of his Chinese ethnicity. While the loss of Handoko's home is unfortunate, this loss occurred during the May 1998 riots in Jakarta during a period of general unrest.  Handoko lived in Jakarta for four years

after the May 1998 riots and suffered no further harm on account of his ethnicity or religion.  See Lengkong v. Gonzales, 478 F.3d 859, 862 (8th Cir. 2007) (holding attack on petitioner's home during May 1998 riots in Jakarta would not support a claim of persecution).

Handoko also argues that his due process rights were violated based on the IJ's failure to adjudicate whether he has a well-founded fear of persecution on account of his religion or ethnicity.  We disagree.  The IJ noted Handoko's testimony that his children had experienced no problems in Indonesia since he left other than the robbery of his daughter, and that the lack of problems diminished "any expressed well-founded fear for him."  IJ's Dec. at 17.  The IJ also recognized, in the context of noting that there was no pattern and practice of persecution against ethnic Chinese Christians, the improved relations between the government and ethnic Chinese citizens.  The BIA also found that the IJ's findings regarding improved country conditions were supported by the record and concluded that Handoko did not establish a well-founded fear of persecution.[2]

Accordingly, we will deny the petition for review.

_____

[2]Handoko also has not shown that the record compels a contrary conclusion.  See Wong v. Attorney General, 539 F.3d 225, 236 (3d Cir. 2008) (stating that the petitioner's claim of a well-founded fear of persecution was undermined where her family still lived in Indonesia and practiced Catholicism).

7