# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1104

_____

Mzenga Aggrey Wanyama, Mary Namalwa Mzenga,
Willy Levin Mzenga, and Billy Masibai Mzenga

*Petitioner*s

v.

Eric H. Holder, Jr., Attorney
General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 15, 2012
Filed: November 1, 2012

_____

Before RILEY, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Mzenga Aggrey Wanyama, his wife, and his children petition for review of an order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of their application for asylum and rejecting their due process claim. We deny the petition.

Wanyama, a citizen and native of Kenya, first entered the United States as a J-1 nonimmigrant exchange visitor in 1992. His wife, Mary Namalwa Mzenga, and their children, Willy Levin Mzenga and Billy Masibai Mzenga, followed in 1995. Upon expiration of his visa in 2005, Wanyama conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on behalf of himself and his family.

Wanyama testified before the IJ that he fears persecution if he returns to Kenya primarily on account of an article he wrote in 2004 criticizing the government of Kenyan President Mwai Kibaki and praising his Orange Democratic Movement opponent Raila Odinga. The article appeared in *The East African Standard*, a widely read Kenyan daily newspaper. Wanyama believes the Kenyan government began to harass his family members in Kenya after the article was published. His brother was fired as managing director of a public development corporation, and a local member of parliament made "suspicious remarks" to Wanyama's mother, questioning her about his activities and whereabouts. Several other family members sent e-mails to Wanyama telling him he should not return to Kenya for safety reasons.

After the article was published, Wanyama believes the Kenyan government intensified its focus on him as a political opponent based on his involvement with an American political group that supported Odinga. Additionally, as his removal proceedings progressed, Wanyama wrote two more articles supporting Odinga's candidacy for the *Standard* in 2007. To illustrate the danger of being identified as a political opponent, he testified about two of Kibaki's opponents that he believes suffered persecution at the hands of the government. His cousin, Michael Wamalwa, was vice president under Kibaki but died in 2003 under "suspicious circumstances." Wanyama theorized that Kibaki's government was responsible because Wamalwa was slated to succeed Kibaki as president pursuant to a memorandum of understanding. He also testified about a professor from the University of Nairobi

whom he believes was murdered for proposing to transfer some power from the presidency to a new prime minister position.

After a hearing in April 2008, the IJ closed the proceedings but asked the parties to submit additional documentation. In December 2009, the IJ reopened the case to allow the parties to submit additional evidence, which included evidence of improved country conditions as a result of the formation of a coalition government in Kenya. Though the IJ found Wanyama's testimony credible to establish a subjective fear of persecution, the IJ determined that Wanyama failed to show an objectively reasonable fear of future persecution. Wanyama appealed the denials to the BIA, where he also claimed the IJ violated his due process rights by delaying his decision and reopening the case *sua sponte* in December 2009, thereby allowing the Government to present evidence of recently improved country conditions. The BIA affirmed the IJ's decision because it found that Wanyama's testimony could not support an objectively reasonable fear of future persecution, and it denied Wanyama's due process claim. Wanyama now petitions for review pursuant to 8 U.S.C. § 1252(b), arguing he is eligible for asylum under 8 U.S.C. § 1158 and renewing his due process claim.[1]

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Davila-Mejia v. Mukasey*, 531 F.3d 624, 627 (8th Cir. 2008). "We review the BIA's denial of an application for asylum . . . using the deferential substantial evidence standard." *Sow v. Mukasey*, 546 F.3d 953, 956 (8th Cir. 2008). Under the substantial evidence standard, we affirm "unless the evidence was so compelling that no reasonable factfinder could fail to find the

---

[1]Wanyama does not argue the IJ improperly denied his withholding of removal or CAT claims. Therefore, we consider these claims waived. *Alyas v. Gonzales*, 419 F.3d 756, 760 (8th Cir. 2005).

requisite fear of persecution." *Osuji v. Holder*, 657 F.3d 719, 720 (8th Cir. 2011) (quoting *Ladyha v. Holder*, 588 F.3d 574, 577 (8th Cir. 2009)).

To qualify for asylum, an applicant must demonstrate that he or she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). Refugees are aliens that are unable or unwilling to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Where, as here, an applicant attempts to establish a well-founded fear of future persecution without having shown past persecution, "the applicant must show the fear is both subjectively genuine and objectively reasonable." *Karim v. Holder*, 596 F.3d 893, 897 (8th Cir. 2010) (quoting *Uli v. Mukasey*, 533 F.3d 950, 955 (8th Cir. 2010)). To establish an objectively reasonable fear of future persecution, "an alien must present credible, direct, and specific evidence of facts that show a reasonable person in the alien's position would fear persecution if returned to the alien's native country." *Litvinov v. Holder*, 605 F.3d 548, 553 (8th Cir. 2010) (quoting *Loulou v. Ashcroft*, 354 F.3d 706, 709 (8th Cir. 2003)).

Wanyama first claims the BIA erred by finding no particularized threat of persecution based on the publication of his 2004 article and his political affiliation, citing the Kenyan government's treatment of his family as well as its alleged treatment of other political opponents. We conclude that substantial evidence supports the BIA's decision. While Wanyama's brother was fired from his government-associated position in 2004, even assuming that he was fired in retaliation for Wanyama's article, his firing would not rise to the level of persecution. *See Lopez-Amador v. Holder*, 649 F.3d 880, 884 (8th Cir. 2011) ("'Persecution is an extreme concept' that 'does not include low-level intimidation and harassment.'" (quoting *Zakirov v. Ashcroft*, 384 F.3d 541, 546 (8th Cir. 2004))). Similarly, the "suspicious remarks" the member of parliament made to Wanyama's mother fail to rise to the level of persecution. *See Quomsieh v. Gonzales*, 479 F.3d 602, 606 (8th

Cir. 2007) (holding that incidents of harassment and unfulfilled threats of injury are not persecution absent physical harm). Wanyama concedes that no family member has suffered physical harm at the hands of the government and that his mother obtained a passport and traveled to the United States without impediment after the 2004 article was published. *Cf. Quiñonez-Perez v. Holder*, 635 F.3d 342, 344 (8th Cir. 2011) (finding even isolated violent attacks on family members insufficient to establish persecution "absent a pattern of persecution tied to the applicant" (quoting *Surya v. Gonzales*, 454 F.3d 874, 878 (8th Cir. 2006))).

Similarly, Wanyama's allegations that the Kenyan government will persecute him, as he alleges it persecuted other political opponents, fail to support an objectively reasonable fear of future persecution. Wanyama presents no evidence to suggest foul play in the death of his cousin, Michael Wamalwa, except to speculate that Wamalwa died under "suspicious circumstances." Wanyama also testified about a Kenyan professor who was murdered in his home, but again Wanyama provides only speculation that the murder was politically motivated. Even assuming these two deaths were attributable to the Kenyan government as acts taken against political opponents, Wanyama fails to establish that he is in a similar position with respect to the current government. In fact, the three articles Wanyama authored praised Raila Odinga, who is now Prime Minister of Kenya. Wanyama presented no evidence beyond speculation to establish that the current coalition government would persecute an individual for writing an article that praises its own prime minister.

Finally, Wanyama claims the BIA erred in finding he did not establish a pattern of persecution against journalists in Kenya to whom he claims to be similarly situated. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A). The BIA determined that Wanyama was a professor of literature, not a journalist, and therefore he could not claim to be similarly situated to Kenyan journalists. We agree. According to his testimony, Wanyama authored only three articles critical of the Kenyan government over the span of several years while serving as a professor and while living in the United

States. Based on this evidence, we are not persuaded that Wanyama is similarly situated to Kenyan journalists. *See Ngure v. Ashcroft*, 367 F.3d 975, 991-92 (8th Cir. 2004); *Feleke v. I.N.S.*, 118 F.3d 594, 598-99 (8th Cir. 1997).

In summary, after reviewing the record, we cannot say that "no reasonable factfinder could fail to find the requisite fear of persecution." *Osuji*, 657 F.3d at 720 (quoting *Ladyha*, 588 F.3d at 577). As a result, we affirm the denial of Wanyama's petition for asylum on behalf of himself and his family.

We also affirm the denial of Wanyama's due process claim. Aliens are entitled to due process in removal proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993), but to succeed on a due process claim, a person must first demonstrate a protected liberty or property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). In *Obleshchenko v. Ashcroft*, we held that aliens do not have a constitutionally protected liberty or property interest in receiving asylum, because it is "statutorily created relief that is subject to the unfettered discretion of a governmental authority." 392 F.3d 970, 971 (8th Cir. 2004) (quoting

*Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 809 (8th Cir. 2003)).[2] Therefore, Wanyama has no protected interest at stake, and his due process claim fails.

In any event, Wanyama has not shown that he suffered the kind of fundamental procedural error required to support a due process challenge. *See Bracic v. Holder*, 603 F.3d 1027, 1032 (8th Cir. 2010) ("To establish a due process violation, [Wanyama] must 'demonstrate both a fundamental procedural error and that the error resulted in prejudice.'" (quoting *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003))). The IJ did not commit fundamental error when she received new evidence of improved country conditions because this action falls within the IJ's broad discretion to admit and consider probative evidence. *See* 8 U.S.C. § 1229a(b)(1); *Ivanov v. Gonzales*, 487 F.3d 635, 639 n.4 (8th Cir. 2007) ("[T]he regulations permit an IJ to reopen removal proceedings at any time upon his or her own motion.").

For these reasons, we deny Wanyama's petition for review.

_____

---

[2]Some decisions of this court reach the merits of an asylum applicant's procedural due process claim without addressing whether the applicant had a protected interest in receiving asylum. *See, e.g.*, *Camishi v. Holder*, 616 F.3d 883, 886 (8th Cir. 2010); *Banat v. Holder*, 557 F.3d 886, 890 (8th Cir. 2009); *Ismail v. Ashcroft*, 396 F.3d 970, 974-75 (8th Cir. 2005). To the extent these decisions conflict with *Obleshchenko* by implicitly finding a protected interest, we nevertheless follow the rule announced in *Obleshchenko*—that an alien does not have a liberty or property interest in receiving asylum—because it is our earliest case to reach the issue, *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011), and because the cases that imply a protected interest did not squarely address the issue, *see Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (holding that *stare decisis* does not apply unless the question at issue was "squarely addressed" in prior decisions).