# Matter of C-I-G-M- & L-V-S-G-, Respondents

*Decided October 31, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) If the Department of Homeland Security claims that an asylum cooperative agreement bars a respondent from applying for asylum in the United States, the Immigration Judge should determine whether the safe third country bar applies prior to and separate from considering a respondent's eligibility for asylum.

(2) A respondent subject to the terms of an asylum cooperative agreement has the burden to establish by a preponderance of the evidence that he or she will more likely than not be persecuted on account of a protected ground or tortured in the relevant third country to avoid application of the safe third country bar and for the respondent to be eligible to seek asylum and other protection claims in the United States.

FOR THE RESPONDENT: Richard J. Hatch, Esquire, Omaha, Nebraska

FOR THE DEPARTMENT OF HOMELAND SECURITY: Danil E. Vishniakov, Associate Legal Advisor

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; HUNSUCKER and VOLKERT, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

The Department of Homeland Security ("DHS") has filed an interlocutory appeal from the Immigration Judge's August 26, 2025, decision denying its motion to pretermit the lead respondent's applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture ("CAT").[1]  *See* sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018); 8 C.F.R. § 1208.16(c) (2025);

---

[1]  The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States on Nov. 20, 1994).  The respondents are the lead respondent and her minor child.  The minor child seeks asylum as a derivative beneficiary of the lead respondent.  INA § 208(b)(3)(A), 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. § 1208.3(a)(1) (2025).  She has not filed separate applications for relief or protection and is not entitled to assert a derivative claim for withholding of removal or CAT protection.  *See Matter of A-K-*, 24 I&N Dec. 275, 279–80 (BIA 2007).  References to the respondent in the singular are to the lead respondent, unless otherwise indicated.

8 C.F.R. § 1208.18(a) (2020).  We requested and received supplemental briefing from both parties.  The appeal will be sustained, and the record will be remanded.

This case involves the safe third country bar to asylum under section 208(a)(2)(A) of the INA, 8 U.S.C. § 1158(b)(2)(A), and the authority of Immigration Judges under 8 C.F.R. § 1240.11(h) (2025) to apply bilateral or multilateral agreements between the United States and countries other than Canada.[2]  Although we do not ordinarily entertain interlocutory appeals, we deem it appropriate to do so here "to correct recurring problems in the handling of cases by Immigration Judges."  *Matter of M-D-*, 24 I&N Dec. 138, 139 (BIA 2007).  Problems involving the handling of cases subject to the regulation have recently become a recurring issue, and our decision in this matter will provide guidance to Immigration Judges and the parties on the proper application of the regulation.  *See* 8 C.F.R. § 1003.1(d)(1) (2025) ("[T]he Board, through precedent decisions, shall provide clear and uniform guidance to DHS, the immigration judges, and the general public on the proper interpretation of the [INA] and its implementing regulations.").

## I. FACTUAL AND PROCEDURAL HISTORY

The respondents are natives and citizens of Guatemala.  They entered the United States without inspection on August 23, 2023.  The next day, DHS served them with notices to appear in removal proceedings.  The lead respondent filed an application for asylum, withholding of removal, and CAT protection on September 28, 2023.  In her application, the respondent claimed that she fears being harmed by her "neighbors and other bad men" in Guatemala.  DHS filed a motion to pretermit the lead respondent's application on August 7, 2025, arguing that she is ineligible to apply for asylum and related relief because she may be removed to Honduras for consideration of those claims pursuant to an agreement between the United States and Honduras.

The respondents filed a brief in opposition to DHS' motion in which they argued, through counsel, that they would be persecuted in Honduras "because they are refugees fleeing from threats and violence against their family in Guatemala."  The respondents did not contest that the lead respondent is otherwise subject to the terms of the agreement with Honduras. Nor did they present any evidence that they had ever been to Honduras.  The only evidence the respondents submitted in support of their argument was

---

[2]   The safe third country agreement between the United States and Canada is separately governed by 8 C.F.R. § 1240.11(g).

the United States Department of State 2023 Country Report on Human Rights Practices for Honduras.

The Immigration Judge denied DHS' motion to pretermit. He stated in his order that the respondent "through counsel presents a fear of travel to Honduras . . . which is an exception to the [asylum cooperative agreement]." The present appeal followed.

The issue on appeal is whether the Immigration Judge applied the correct analysis in determining that the safe third country bar to asylum did not apply to the respondent. Whether the facts establish that a statutory bar to asylum applies is a legal question we review de novo. 8 C.F.R. § 1003.1(d)(3)(i) (2025); *see also Matter of A-G-G-*, 25 I&N Dec. 486, 488 (BIA 2011) (involving the firm resettlement bar).

## II. DISCUSSION

### A. Legal Background

Under the safe third country bar to asylum, an alien is ineligible to apply for asylum in the United States

> if the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.

INA § 208(a)(2)(A), 8 U.S.C. § 1158(a)(2)(A). This bar is implemented in relevant part by 8 C.F.R. § 1240.11(h), which governs the authority of Immigration Judges to apply asylum cooperative agreements ("ACAs") between the United States and countries other than Canada. *See* Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act, 84 Fed Reg. 63994, 64010 (Nov. 19, 2019) (interim rule) ("ACA Rule").[3] The regulation applies "only prospectively to aliens who arrive at a U.S. port of entry, or enter the United States between ports of entry, on or after" November 19, 2019, and

---

[3] The Secretary of Homeland Security recently ratified the ACA Rule. *See* Ratification of Department Action, 90 Fed. Reg. 42309 (Sept. 2, 2025).

"provide[s] a general mechanism for implementation of all existing and future ACAs not previously implemented." *Id.* at 63995–96.

Under the regulation, an Immigration Judge is required to "determine whether under the relevant [ACA] agreement the alien should be removed to the third country, or whether the alien should be permitted to pursue asylum or other protection claims in the United States." 8 C.F.R. § 1240.11(h)(1). An alien subject to an ACA is ineligible to apply for asylum, withholding of removal, or CAT protection in the United States

> unless the immigration judge determines, by a preponderance of the evidence, that:
>     (i) The relevant agreement does not apply to the alien or does not preclude the alien from applying for asylum in the United States;
>     (ii) The alien qualifies for an exception to the relevant agreement as set forth in paragraph (h)(3) of this section and the Federal Register document specifying the exceptions particular to the relevant agreement; or
>     (iii) The alien has demonstrated that it is more likely than not that he or she would be persecuted on account of a protected ground or tortured in the third country.

8 C.F.R. § 1240.11(h)(2). If an alien is "subject to the terms of" one or more ACAs and has not demonstrated that the safe third country bar does not apply, the Immigration Judge shall order the alien "removed to the relevant third country in which the alien will be able to pursue his or her claims for asylum or protection against persecution or torture under the laws of that country." 8 C.F.R. § 1240.11(h)(4). "If more than one agreement applies to the alien and the alien is ordered removed, the immigration judge shall enter alternate orders of removal to each relevant country." 8 C.F.R. § 1240.11(h)(1).

In applying the safe third country bar, the authority delegated to Immigration Judges by the regulation is limited to determining whether any of the conditions discussed in 8 C.F.R. § 1240.11(h)(2) apply so as to render the relevant ACA inapplicable to the particular respondent. Immigration Judges do not have authority to make the determination required under section 208(a)(2)(A) of the INA as to whether "the alien would have access to a full and fair procedure" in the third country because the Attorney General has expressly reserved that statutory authority. *See* 84 Fed. Reg. 63997, 64002 (explaining that the Attorney General and the Secretary of Homeland Security will make the threshold full and fair third country determination prior to the implementation of an ACA, and that this determination is "separate and apart from the regulatory provisions" in the ACA rule). Similarly, Immigration Judges lack authority to determine whether it is in the public interest for an alien subject to an ACA to pursue asylum in the United

States because section 208(a)(2)(A) of the INA, 8 U.S.C. § 1158(a)(2)(A), "reserves to the Secretary [of Homeland Security] or [her] delegates the determination whether it is in the public interest for the alien to receive asylum in the United States." 8 C.F.R. § 1240.11(h)(3).[4]

The United States entered into an ACA with Honduras on March 10, 2025. *See* Agreement Between the Government of the United States of America and the Government of the Republic of Honduras for Cooperation in the Examination of Protection Requests, 90 Fed. Reg. 30076 (July 8, 2025). The ACA does not apply to unaccompanied minors, nationals or habitual residents of Honduras, or people involved in certain crimes or subject to Interpol notifications. *Id*. at 30078–80. As originally agreed, the ACA would only apply to aliens who arrived in the United States on or after the date the ACA entered into force. *Id.* at 30078–79. The Governments of the United States and Honduras exchanged diplomatic notes on June 25, 2025, which amended the ACA by removing that temporal limitation. *Id.* at 30082–86.

B. Procedures in Removal Proceedings

If a respondent seeking asylum is subject to the terms of an ACA, DHS must provide oral or written notice that it intends to remove the respondent to the relevant third country for consideration of his or her asylum claim. *See* 84 Fed Reg. at 64000 ("[T]his interim rule provides that an alien who will potentially be subject to an ACA will be advised that he or she may be removed to a third country pursuant to a bilateral or multilateral agreement."). Once DHS has provided notice, the respondent must have a reasonable opportunity to satisfy his or her burden to show by a preponderance of the evidence that the safe third country bar does not apply because he or she will more likely than not be persecuted or tortured in the relevant third country. *See* 8 C.F.R. §§ 1240.8(d), 1240.11(h)(2)(iii); *see also Matter of H-A-A-V-*, 29 I&N Dec. 233, 234 (BIA 2025) (explaining that "statutory and regulatory provisions [governing removal proceedings] ensure that the respondent has the opportunity to present evidence in support

---

[4]   Immigration Judges may not require DHS to demonstrate that an ACA country of removal is willing to accept a respondent who is subject to the terms of an ACA. *See* 8 C.F.R. § 241.15(d) (2025) ("No commitment of acceptance by the receiving country is required prior to designation of the receiving country, before travel arrangements are made, or before the alien is transported to the receiving country."); *see also Matter of A-S-M-*, 28 I&N Dec. 282, 285 (BIA 2021) (recognizing that Immigration Judges do not have jurisdiction to review DHS' discretionary determination as to the country of removal).

of any applications for relief and to respond to any evidence presented by DHS").

Where a respondent claims the ACA bar should not apply, the Immigration Judge must determine the bar's applicability and, to the extent it may be necessary to resolve disputed facts, hold an evidentiary hearing to address them. Because a respondent will generally have no substantial connection to the relevant third country, evaluating a respondent's claim of future persecution or torture in the third country "is more straightforward" than undertaking "a complex assessment" of an asylum applicant's fear of persecution in his or her home country. 84 Fed Reg. at 64004. As the commentary to the ACA Rule notes, "[b]ecause the ACA country of removal did not prompt the alien's claim, the process for determining simply whether to send the alien to a third country for that consideration is reasonably more minimalistic than the requisite procedures for deciding asylum and withholding of removal claims on the merits." *Id.*

Thus, if a respondent subject to an ACA claims a fear of persecution or torture in a relevant third country, but has no substantial connection to that country, an Immigration Judge should typically be able to resolve the applicability of the safe third country bar without conducting a full evidentiary hearing. Instead, it will generally be appropriate for the Immigration Judge to conduct an abbreviated hearing, typically in a master calendar setting, that includes consideration of any documentary evidence submitted by the respondent. *See Matter of H-A-A-V-*, 29 I&N Dec. at 235–36, 238 (holding that it is appropriate for an Immigration Judge to pretermit a respondent's applications for asylum, withholding of removal, and CAT protection without a full evidentiary hearing in certain circumstances).

The ACA Rule was promulgated to facilitate "a threshold screening to determine whether an alien is barred from applying for asylum in the United States pursuant to an ACA." 84 Fed Reg. at 63998. Thus, if DHS claims that an ACA bars a respondent from applying for asylum in the United States, the Immigration Judge should determine whether the safe third country bar applies prior to and separate from considering a respondent's eligibility for asylum. If the respondent meets his or her burden to demonstrate that the bar does not apply, the Immigration Judge should proceed to consider the merits of the respondent's asylum and protection claims. However, if the respondent does not meet his or her burden, the safe third country bar applies, and there is no basis for the Immigration Judge to further consider asylum. *See* 8 C.F.R. § 1240.11(h)(4); 84 Fed Reg. at 63996 ("[A]pplication of the ACA bar does not involve an evaluation of whether an alien would ultimately

receive asylum relief if able to apply, or even whether the alien has made a preliminary showing of a significant possibility that the alien would be eligible for asylum.").  The Immigration Judge should order the respondent removed to the relevant third country.  8 C.F.R. § 1240.11(h)(4).

## C. Application to the Respondent

DHS' motion to pretermit the respondent's asylum application provided her with proper notice of its intent to remove her to Honduras for consideration of her asylum and protection claims under the relevant ACA. The respondents' opposition to the motion claimed that they would be persecuted in Honduras "because they are refugees fleeing from threats and violence against their family in Guatemala," and was supported only by the country report for Honduras.  The Immigration Judge erred in denying, without meaningful factual or legal basis, DHS' motion based on the respondent's "fear of travel to Honduras."

Under 8 C.F.R. § 1240.11(h)(2)(iii), a respondent subject to the terms of an ACA has the burden to establish by a preponderance of the evidence that he or she will more likely than not be persecuted on account of a protected ground or tortured in the relevant third country to avoid application of the safe third country bar and for the respondent to be eligible to seek asylum and other protection claims in the United States.  The respondents' counsel made conclusory statements to the Immigration Judge that the respondents in this case will be persecuted in Honduras.  However, the respondents have presented no evidence that they have ever been to Honduras or that anyone in Honduras would target them for harm based on their Guatemalan nationality or their alleged status as individuals "fleeing from threats and violence against their family in Guatemala."  The generalized evidence of country conditions in Honduras submitted with their response to DHS' motion is clearly insufficient to satisfy the burden of proof.  *See generally Setiadi v. Gonzales*, 437 F.3d 710, 714 (8th Cir. 2006) ("It is insufficient to allege a generalized fear of persecution because of isolated acts of violence to those other than the [respondent]."); *Nadeem v. Holder*, 599 F.3d 869, 873–74 (8th Cir. 2010) ("Evidence of general conditions is insufficient to establish that one is more likely than not to suffer torture.").

## D. Other Issues

The respondent argues that she cannot be subject to the ACA with Honduras because it was implemented after she arrived in the United States and filed her asylum application.  The respondent arrived in the United States on August 23, 2023, and applied for asylum approximately a month later.

The ACA with Honduras was entered into on March 10, 2025, and entered into force on June 25, 2025.  90 Fed. Reg. at 30080–81, 30086.

Although the ACA with Honduras was entered into after the respondent applied for asylum, the ACA Rule governing the "implementation of all existing and future ACAs" took effect on November 19, 2019, several years before the respondents entered the United States.  84 Fed Reg. at 63995–63996; *see also id.* at 63995 (explaining that the ACA Rule will apply to "any future" agreements "once the agreements enter into force").  Moreover, the ACA with Honduras, as amended, specifically states that it applies to aliens who arrived in the United States at any time.  90 Fed. Reg. at 30079–80, 30082–86; *see also Avero Belgium Ins. v. Am. Airlines, Inc.*, 423 F.3d 73, 81 (2d Cir. 2005) (explaining that a treaty may govern conduct that occurred before the treaty entered into force when such an "intention appears from the treaty or is otherwise established" (citation omitted)).

Thus, we conclude that the respondent is subject to the ACA with Honduras through the application of 8 C.F.R. § 1240.11(h).  Although the ACA with Honduras was not implemented until after the respondent filed her asylum application in the United States, "application of the new provision is not retroactive" because it only "affects the propriety of prospective relief." *Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994); *see also Wanyama v. Holder*, 698 F.3d 1032, 1037 (8th Cir. 2012) ("[A]liens do not have a constitutionally protected liberty or property interest in receiving asylum, because it is 'statutorily created relief that is subject to the unfettered discretion of a governmental authority.'" (quoting *Obleshchenko v. Ashcroft*, 392 F.3d 970, 971 (8th Cir. 2004))).  Nothing in section 208(a)(2)(A) of the INA, 8 U.S.C. § 1158(a)(2)(A), restricts the application of this bar to agreements formed after an alien's arrival in the United States.

The respondent also argues in her supplemental brief that Honduras does not provide a full and fair procedure for adjudicating her asylum claim and it would be in the public interest to allow her to pursue her asylum claim in the United States.  As explained in part II.A., the Attorney General and the Secretary of Homeland Security have expressly reserved the authority to determine whether aliens have access to full and fair procedures as required under section 208(a)(2)(A) of the INA, 8 U.S.C. § 1158(a)(2)(A).  *See* 84 Fed Reg. at 63997, 64002.  Additionally, the authority to make the "public interest" determination is reserved to the Secretary and her delegates. 8 C.F.R. § 1240.11(h)(3).  Neither the Immigration Judge nor the Board has the authority to make either of these determinations.  *See Matter of H-M-V-*, 22 I&N Dec. 256, 258 (BIA 1998) ("[T]he jurisdiction of this Board, and of

the Immigration Judge, is limited by statute and regulation to that which has been delegated by the Attorney General.").

## III.CONCLUSION

The Immigration Judge erred in determining that the ACA with Honduras does not apply to the respondent based solely on counsel's representations that the respondent fears being harmed there and generalized evidence of country conditions in Honduras.  Accordingly, we will sustain DHS' appeal and reverse the Immigration Judge's denial of its motion to pretermit.  We will remand the record to the Immigration Judge for further consideration of the applicability of the ACA bar consistent with the guidance provided in this decision.  On remand, the Immigration Judge should take any other action necessary for the resolution of the respondents' removal proceedings, including making a determination on their removability.  We express no opinion on the ultimate outcome of these proceedings. *See Matter of L-O-G-*, 21 I&N Dec. 413, 422 (BIA 1996).

**ORDER:**  The appeal is sustained, and the Immigration Judge's August 26, 2025, decision denying DHS' motion to pretermit is vacated.

**FURTHER ORDER:**  The record is remanded for further proceedings consistent with the foregoing opinion.